W. B. CLAY *et al. v.* FRANK BUCHANAN *et al.*

(*Nashville,* December Term, 1930.)

Opinion filed March 14, 1931.

WALTER S. FAULKNER, for complainants, appellants.

ROBERTS & ROBERTS and WILLIAM GREEN, for defendants, appellees.

MR. JUSTICE COOK delivered the opinion of the Court.

The bill was filed by citizens and taxpayers against the mayor and aldermen of Lebanon to enjoin the issuance of municipal waterworks bonds. The chancellor sustained defendants' demurrer to the bill and complainants appealed.

The assignment of error and brief of complainants sufficiently present the question raised upon the action of the chancellor in sustaining the demurrer to the bill and defendants' motion to affirm for want of sufficient assignments of error is overruled.

It was charged in the bill that chapter 685, Private Acts of 1929, amending the charter of Lebanon, under which defendants assumed authority to act for the municipality, is unconstitutional and conferred no power upon them to commit the Town of Lebanon, incorporated by chapter 644, Acts of 1911, to the policy of issuing bonds, and conferred no authority upon them to call the election through which that policy was approved by a vote of 247 for and 225 against issuance of bonds.

It was further charged that the election was rendered void by the illegal and arbitrary acts of the election officers. That a majority of the legal voters of the municipality were opposed to the issuance of bonds and ballots were tendered by a sufficient number of qualified voters who opposed the issuance of bonds to constitute a majority against bonds, and that the election officers illegally rejected such ballots when tendered by legally qualified

voters, and for that reason the election should be declared void.

By chapter 365, Private Acts of 1929, passed March 30th, the Town of Lebanon was empowered to issue not exceeding $200,000 of bonds for municipal waterworks, if approved by a majority of the qualified voters, in an election called by the board of commissioners to ascertain the will of the electorate. When that Act was passed, the Town of Lebanon, incorporated by chapter 644, Acts of 1911, was governed by a board composed of three commissioners elected from the town at large. It does not appear that the charter of the Town of Lebanon contained a provision designating and laying out wards, and under the plan of government wards were not essential.

Chapter 685, Private Acts of 1929, changed the name of the municipal governing body to a city council composed of a mayor and aldermen, the aldermen to be elected and to hold office for wards in which each resided, but all to be elected by voters from the city at large. The amended charter erected the Town of Lebanon into the City of Lebanon. It does not appear that the amended charter erecting the City of Lebanon designated and described wards. It is charged that because the city was not divided into wards the election of aldermen from the city at large was void and their acts illegal. The official acts of the aldermen would not be open to collateral attack for lack of wards. It is not charged that they were not chosen in the manner prescribed in the amended charter and, if elected and inducted into office as prescribed by the charter, their ineligibility, dependent only upon the existence of wards within which each resided, could not impair their official acts as a *de facto* municipal governing body. See 46 C. J., p. 1006, section

213; p. 1054, section 367; p. 1056, section 370, and p. 1060, section 378.

It is also charged that the powers conferred on the board of commissioners of the Town of Lebanon by chapter 365, Private Acts of 1929, passed before the charter was amended, could not be exercised by the board of mayor and aldermen. All the governmental authority vested in the board of commissioners under the original charter passed to the board of mayor and aldermen under the amended charter.

If the defendants as either *de jure* or *de facto* officers could legally exercise the powers indicated by chapter 685, Private Acts of 1929, they, as successors to the board of commissioners, could exercise the powers conferred by chapter 365, Private Acts of 1929, their authority being drawn not only from the express provision of section 3, article 3, of chapter 685, but also from the continuity of authority passing to them as the successors to the former municipal governing body.

It is charged that chapter 685, the amendatory charter of 1929, is unconstitutional, because:

First. By subsection 2, section 1, article 2, of the Act, the municipality was empowered to exempt particular industries from taxation contrary to Article II, section 28, of the Constitution.

Second. By subsection 4, section 1, article 2, the municipality was empowered to give money and lend credit to private uses in violation of Article II, section 29, of the Constitution.

Third. By subsection 5, section 1, article 2, the municipality was empowered to supply at public expense free water and electric current to certain enterprises dis-

criminating in their favor contrary to Article XI, section 8, of the Constitution.

Fourth. That sections 1 and 2 empowering the municipality to regulate the subdivision of lands beyond the corporate limits and to enforce municipal laws and ordinances within a mile beyond the corporate limits violate the due process clause of the Constitution.

As originally enacted, the amendatory charter of 1929 contained so many far-reaching unconstitutional provisions that it could not be reasonably inferred that the legislature would have passed the Act with those provisions omitted and so the doctrine of elision could not have been applied, notwithstanding the legislative declaration found in section 14 on page 2051 of the Private Acts of 1929. 1 Lewis' Sutherland Statutory Construction, 583.

But by chapter 1, Extra-ordinary Session of 1929, passed December 6th, the legislature struck out of the amendatory charter all of the provisions which complainants say rendered the Act void, except sections 1 and 2. These sections are distinct and readily severable and may be elided if they do in fact contravene constitutional rights as alleged in the bill. *State* v. *Trewhitt,* 113 Tenn., 571.

With sections 1 and 2, if unconstitutional, elided, and with the other objectionable provisions stricken by the legislative amendment referred to, chapter 685 of the Private Acts of 1929 is valid and provides a new form of government by a city council composed of the mayor and aldermen.

In *State* v. *Corker,* 67 N. J. L., 596, 60 L. R. A., 564, it was held that a statute so framed as to be wholly or in part unconstitutional, but having a title expressing a

constitutional object, could be cured by an amendment striking out the invalidating provisions. In reaching that conclusion the court said, with good reason, that the two Acts, the amendatory Act and the original or defective Act, are to be read together, and if when so read a constitutional enactment appears the courts must give it effect. *Goodbar* v. *Memphis,* 113 Tenn., 20, declaring that a curative amendatory Act shall operate only from and after the amendment is in accord with the view of the New Jersey court.

■ It is also alleged that the Act is void because designed to legislate out of office the board of commissioners and confer the office upon the board of mayor and aldermen. Municipal offices are subject to abolition by a change in or amendment of the charter before expiration of the term. 43 C. J., p. 601, section 980.

In *Howse* v. *Creveling,* 147 Tenn., 605, referring to *Hunter* v. *Crump,* Ms. Jackson, 1910, and *Van Dyke* v. *Thompson,* 136 Tenn., 126, the court said that it was competent for the legislature to change the plan of government under which a municipality had hitherto functioned when it seemed advisable for the legislature to do so, notwithstanding a change might result in depriving municipal officers of their office, because such officers had no such right to their office as could be asserted to the frustration of any plan of municipal government. This statement of the rule assumes, of course, that the change in the form of government was real and not colorable, for the purpose of putting one set out and another set in office. See *Smith* v. *Sells,* 156 Tenn., 539.

■ It is apparent that the change proposed by the amendatory Act was real and not designed to legislate the board of commissioners out of office. It appears from

section 2, Article XII, of the amendatory Act, that provision was made for the board of commissioners and other municipal officers to hold until their successors could be elected at the regular October municipal election and inducted into office on January 1, 1930, thereafter.

Prior to the enactment of the amendatory Act of December 6, 1929, removing the alleged constitutional defects from the original amendatory Act passed in April, 1929, the municipal government of the City of Lebanon was *de facto*. After the Act of December, 1929, it was *de jure* and the defendants, in their capacity as mayor and aldermen composing the city council, could pass the ordinances which provided for the issuance of bonds and could legally call the election to determine the will of the voters. The election so held was not void because nonresidents owning property in the city were denied the right to vote. They were given the right to vote under the Act of 1911 but by section 3, article 3, of the Act passed in April, 1929, the right of nonresident property owners to vote in municipal elections was not given. On the contrary, they were expressly denied the right to vote. The legislature had power to so circumscribe the privilege of voting within the corporate limits. The right of nonresident property owners to vote in municipal elections is dependent altogether upon the determination of the legislature.

The charges in the bill of other alleged invalidating irregularities in the election are too general. *Furnace Co. v. Railroad*, 113 Tenn., 710. Affirmed.