KNOXVILLE HOUSING AUTHORITY, INC., *v.* CITY OF KNOX-
VILLE, *et al.*

(*Knoxville,* September Term, 1938.)

Opinion filed January 21, 1939.

DANIEL J. KELLY, of Knoxville, for complainant.

ROY H. BEELER, Attorney-General, for the State.

JAMES G. JOHNSON, of Knoxville, for Knox County.

W. W. KENNERLY, of Knoxville, for City of Knoxville.

R. R. RUSSELL, of Knoxville, for Eugene C. Fretz.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by Knoxville Housing Authority under the declaratory judgments statute, Code, section 8835 *et seq.*, seeking a judicial ascertainment of its rights in certain particulars. It is conceded that there is a real subsisting controversy and that one or more of the defendants is a proper contradictor with respect to each difference of parties presented and that the case is cognizable under the statute above mentioned. The controversies involve questions of law only and defendants

interpose demurrers. The chancellor overruled the demurrers *in toto* and made a declaration in all respects favorable to the complainant. Defendants have appealed.

Knoxville Housing Authority was brought out under chapter 20 of the Public Acts of the First Special Session of the General Assembly of 1935, as amended by chapter 234 of the Pub. Acts of 1937. Generally speaking, these statutes provide that cities of the State may set up and procure the incorporation of an Authority with power to take over slum areas in the cities, designated after investigation, and to clear said areas, replan and reconstruct same, and provide therein housing accommodations for persons of low income. Such an Authority is empowered to issue and sell bonds under certain limitations, is endowed with the power of eminent domain, and the property of the Authority and its bonds are exempted from all taxation. An Authority set up under the statutes is authorized to contract with the United States Housing Authority with respect to financial aid from the latter source, and it appears in the case before us that such a contract has been entered into between the local Authority and the Federal Authority.

Since the enactment of the Federal Housing Act of 1937, projects like the one here involved have been undertaken in many of the cities of the country and the general scheme has become so familiar as to relieve us of the necessity of an elaborate and detailed statement here.

The points of controversy between the complainant and defendants involve the validity of the two statutes mentioned as a whole and involve the validity of certain provisions of the statutes which perhaps might be elided if such provisions were held bad. We consider these

points separately, but not in the order in which they were discussed in the defendants' brief.

It is said that the Act of 1935 is wholly unconstitutional in that it embraces, both in title and body, more than one subject in violation of Section 17 of Article 2 of the constitution of Tennessee.

The title of the Act of 1935 is as follows:

"An Act to declare the necessity of creating public bodies corporate and politic to be known as Housing Authorities to engage in slum clearance and/or projects to provide dwelling accommodations for persons of low income; to provide for the creation of such Housing Authorities; to define the powers and duties of Housing Authorities and to provide for the exercise of such powers, including acquiring property by purchase, gift or eminent domain, and including borrowing money, issuing revenue and credit bonds and other obligations, and giving security therefor; to confer remedies on obligees of Housing Authorities; to provide that the bonds of the Authority shall be legal investment; and to declare that this Act take effect from the date of its passage."

■ The contention is that so much of the Act, foreshadowed by the caption, as undertakes to confer remedies on obligees of Housing Authorities, is a subject distinct from that dealt with by the remainder of the statute. We think this criticism is not well founded. To enable it to function, as an incident of its creation, a Housing Authority is given power to acquire property by purchase, to borrow money, and to issue bonds. A provision for the benefit of the Authority's creditors is entirely germane to the general purpose as a means of giving the organization a financial rating and making its securities marketable.

■■ It is argued that the Act of 1935, as amended by the Act of 1937, violates Sections 1 and 2 of Article 2 of the Constitution of the State in that it undertakes to delegate to Housing Authorities legislative power to determine the type, nature, and extent of the projects to be undertaken, and the power to determine certain other matters of detail without prescribing any definite standards to guide such Housing Authorities.

In the same connection it is said that this statute violates Sections 1 and 2 of Article 2 of the Constitution in that it delegates to the council of the city the power to declare when a Housing Authority shall be created by finding whether unsanitary dwelling accommodations exist in a particular area, etc., without prescribing any definite standards to guide the city council in making such finding.

We think there is no merit in the two objections to the Acts just stated. The discretion committed to the Housing Authority in the one instance and to the city council in the other is no broader than the discretion committed to other fact-finding bodies in laws previously sustained by this court. Instances are a delegation of the power to such a body to select textbooks for the schools of the State, *Leeper* v. *State,* 103 Tenn., 500, 53 S. W., 962, 48 L. R. A., 167; a delegation of the power to such body to make exemptions or exceptions from the zoning ordinance of a city, *Spencer-Sturla Co.* v. *City of Memphis,* 155 Tenn., 70, 290 S. W., 608; delegation of the power to such body to locate cemeteries, *Mensi* v. *Walker,* 160 Tenn., 468, 26 S. W. (2d), 132. Illustrations like this might be multiplied.

■■ Another criticism is that the Act of 1935 is unconstitutional in that section 24 thereof provides that

banks and trust companies are authorized to give security for deposits of the funds of a Housing Authority and that section 25 of the Act of 1935 provides that the bonds issued by a Housing Authority should be valid investments for all public bodies of the State, insurance companies, savings and loan associations, guardians, etc. It is said that these matters introduce other subjects into the Act of 1935 and are likewise beyond the scope of the caption of that Act in violation of Section 17 of Article 2 of the Constitution.

If these objections were well founded they were removed by section 4 of the Act of 1937, which repealed sections 24, 25, and 26 of the Acts of 1935. A statute so framed as to be wholly or in part unconstitutional, but having a title expressing a constitutional object, can be cured by an amendment striking out the invalidating provisions. *Clay v. Buchanan,* 162 Tenn., 204, 36 S. W. (2d), 91.

It is very earnestly insisted on behalf of a property owner whose holdings are included in the area to be taken over by this Housing Authority that so much of the statutes before us as undertake to confer upon the Authority the power of eminent domain is invalid, in violation of Section 8 of Article 1 of the Constitution of Tennessee and the Fourteenth Amendment to the Constitution of the United States, for the reason that the purpose for which the property is to be taken is not a public purpose and the use to which the property is to be put is not a public use. This is a familiar objection to legislation of this character. As heretofore stated, taking advantage of the Federal Housing Act, legislation has been enacted in many States authorizing the creation of local Housing Authorities similar to complainant herein.

The power of eminent domain has quite generally been conferred upon such organizations and uniformly sustained.

The courts reason that the primary object of all government is to foster the health, morals and safety of the people. That slum districts with their filthy, congested, weather-exposed living quarters are breeding places of disease, immorality and crime. The character of the houses in such districts make of them a fire hazard. The existence of such districts depresses the taxable value of neighboring property and deprives the State of revenue. The State is also put to great expense in combating disease, crime and conflagration originating in such localities. They menace not only the health, safety and morals of those living therein, but since disease, crime, immorality and fires can with difficulty be confined to points of origin, these districts are a menace to the whole community—indeed, a menace to the State.

Without dissent, therefore, the courts have reached the conclusion that slum clearance was a public purpose and that Housing Authorities serve a public use. Upholding statutes similar to the Acts before us granting the power of eminent domain to organizations like complainant herein, we refer to *New York City Housing Authority* v. *Muller*, 270 N. Y., 333, 1 N. E. (2d), 153, 105 A. L. R., 905; *Dornan* v. *Philadelphia Housing Authority et al.*, 331 Pa., 209, 200 A., 834; *Wells* v. *Housing Authority*, 213 N. C., 744, 197 S. E., 693; *Sphan* v. *Stewart*, 268 Ky., 97, 103 S. W. (2d), 651. We have been supplied with opinions, not published at the time this case was submitted, of the Supreme Court of Florida in *Marvin* v. *Housing Authority*, 183 So., 145 (July 27, 1938); of the Supreme Court of Louisiana in *State ex rel., Porterie* v.

*Housing Authority*, 190 La., 710, 182 So., 725 (June 27, 1938) ; and of the Supreme Court of South Carolina in *McNulty* v. *Owens, Mayor, et al.*, 188 S. C., 377, 199 S. E., 425 (October 13, 1938),—all to the same effect.

This court long since declared that ''the term 'public use' is a flexible one. It varies and expands with the growing needs of a more complex social order.'' *Ryan* v. *Terminal Co.*, 102 Tenn., 111, 116, 50 S. W., 744, 745, 45 L. R. A., 303.

We have further said that ''an enterprise does not lose the character of a public use because of the fact that its service may be limited by circumstances to a comparatively small part of the public.'' *Tennessee Coal, Iron & Railroad Co.* v. *Transportation Co.*, 128 Tenn., 277, 283, 160 S. W., 522, 524.

So that, although the contrary is true, if the benefits of this project were confined to the particular persons of low income for whom housing accommodations are provided, the project might be none the less a public use.

▮ The novelty of a purpose does not render it the less a public purpose. The conception of a public purpose must necessarily broaden as the functions of government continue to expand. We are satisfied, therefore, that the purpose for which a Housing Authority is created is properly a public purpose and that such an entity serves a public use.

▮ In addition to the assault made upon chapter 20 of the Public Acts of the First Extra Session of 1935 and the amendatory Act, chapter 234 of the Public Acts of 1937, defendants City of Knoxville and Knox County attack the validity of chapter 214 of the Public Acts of 1937. Chapter 214 provides that the property and bonds of Housing Authorities, created under the other statutes

mentioned, shall be exempt from all State, County and city taxation and assessments. This is the most serious question in the case but it seems to be closed against defendants' contentions by previous decisions of this court.

Section 28 of Article 2 of the Constitution of Tennessee provides ''all property, real, personal or mixed, shall be taxed, but the Legislature may except such as may be held by the State, by counties, cities or towns, and used exclusively for public or corporation purposes.''

We have seen that complainant Housing Authority holds its property for a public purpose. Is this holding of property a holding·by the State, by a county, or by a city or town? We think the holding of the property involved is a holding by the City of Knoxville in the sense of our decisions.

Under the provisions of the Act of 1935, a Housing Authority thereby authorized is brought out by the city council of the particular city in which it is to be located after a public hearing. The mayor of the city appoints the commissioners to act as an Authority and this commission constitutes the body corporate and politic. These commissioners may be removed for sufficient cause by the mayor; the city attorney is required to render legal services to the Housing Authority, and the city has other powers of supervision and control.

It follows that while the Housing Authority is incorporated, it is still a mere agency or instrumentality of the city. The relation is altogether similar to the relation of the University of Tennessee to the State. The University is incorporated, but its board of trustees, apart from the Governor and certain State officers *ex officio* members, is appointed by the Governor subject to confirmation of the Senate. There are statutes of the State

with reference to the control and management of the University. In considering the nature of property owned by the University, this court said:

"We are of the opinion that the State, and the public represented by it, must be considered as the owner of property held by the University, and that the sovereign character of the State's ownership is not changed by the creation of the corporation, as a convenient means through which the State exercises the strictly governmental function of educating the youth among its citizens." *University of Tennessee* v. *People's Bank*, 157 Tenn., 87, 6 S. W. (2d), 328, 330.

We, therefore, conclude that the property involved is still to be regarded as city property, although as a matter of convenience the title rests in this subsidiary corporation.

The Housing Authority, although incorporated, being none the less an arm or agency of the City of Knoxville, both property held by the Authority and bonds issued by the Authority may be exempted from taxation by the Legislature, as were the property and bonds of a school district. *Greenwood* v. *Rickman*, 145 Tenn., 361, 235 S. W., 425.

It is finally urged by the defendants that certain steps preliminary to the incorporation of a Housing District, prescribed by the statutes, were not taken by those in charge and that for this reason the Housing Authority was not legally incorporated and cannot legally function.

An examination of the exhibits sent up with this record indicates to us that all statutory formalities were substantially observed in procuring the charter of this organization. At any rate, a certificate of incorporation

has issued to Knoxville Housing Authority from the office of the Secretary of State attested by that official. Nothing is here presented but a collateral attack on the charter of the corporation. The last paragraph of section 4 of the Act of 1935 provides that "the authority shall be conclusively deemed to have been established in accordance with the provisions of this Act upon proof of the issuance of the aforesaid certificate by the Secretary of State." A certified copy of such certificate is contained in the record before us.

We find no error in the conclusions reached by the chancellor and his decree is affirmed.