FIRST SUBURBAN WATER UTILITY DIST. *v.* McCANLESS, COM'R, *et al.*

(*Nashville,* December Term, 1940.)

Opinion filed February 1, 1941.

130

CORNELIUS, McKINNEY & GILBERT, (JOSEPH H. BALLEW, of Counsel) of Nashville, for complainant.

HORACE OSMENT, of Nashville, and LON P. MACFARLAND, of Lebanon, for defendants.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

By this suit it is sought (1) to recover certain State taxes paid under protest to the defendant Commissioner, and (2) to enjoin the County Trustee from collecting

taxes assessed by the Railroad and Public Utilities Commission. The Suburban Company is a "Utility District," organized under Chapter 248, Public Acts of 1937, which provides for the creation of Public Corporations to be styled "Districts," with power of perpetual succession, "for the purpose of conducting and operating a water, sewer, or fire protection system or two or more of such systems and to carry out such purpose it shall have power and authority to acquire, construct, reconstruct, improve, better, extend, consolidate, maintain and operate such system or systems within or without the district and to purchase from, and furnish, deliver and sell to, any municipality, the State, any public institution and the public, generally, any of the services authorized by this Act." Section 5.

Broad powers are conferred for the accomplishment of all proper purposes, including many powers usually enjoyed by municipal corporations, including power to sue and be sued, contract and convey, borrow and mortgage, acquire, hold and improve property, particularly such as is required for its utility services and development, also power of eminent domain, "but," as expressly provided, "without any power to levy or collect taxes." The act provides that all the expense of construction, acquisition, upkeep and operation of the system shall be provided for by (1) service charges and (2) interest bearing bonds, payable from revenue only.

The defendants by demurrer challenged the constitutionality of the Utility Act of 1937 which the Chancellor overruled and this is the sole question before us on this appeal. If this act is constitutional the District is exempt from taxation by the express terms of Section 15 of the Act, as follows:

"Systems and Bonds Exempt From Taxation. Be it

further enacted, That so long as a district shall own any system, the property and revenue of such system shall be exempt from all State, county and municipal taxation. Bonds issued pursuant to this Act and the income therefrom shall be exempt from all State, county and municipal taxation, except inheritance, transfer and estate taxes, and it shall be so stated on the face of said bonds."

And the Railroad and Public Utilities Commission is excluded from jurisdiction of it by Section 16, as follows:

"Regulation. Be it further enacted, That neither the Railroad and Public Utilities Commission nor any other board or commission of like character hereafter created shall have jurisdiction over the district in the management and control of any system, including the regulation of its rates, fees, tolls or charges."

The first and chief insistence of the appellants is that this exemption from taxation is, as expressed in the first ground of demurrer, "invalid, void and of no effect, it being in direct contravention of the Constitution of the State of Tennessee and particularly Section 28 of Article 2 of said Constitution, the pertinent part of which is as follows:

" 'All property, real, personal or mixed, shall be taxed, but the Legislature may except such as may be held by the State, by counties, cites or towns, and used exclusively for public or corporation purposes.' "

If this incorporated Utility District is property of the State, or of any one of the arms of the State government, then it is well settled that it may be exempted from taxation by the Legislature. *State ex rel. Fort, Commissioner, et al.,* v. *City of Jackson,* 172 Tenn., 119, 110 S. W. (2d), 323, and numerous cases there cited. It is said that it does not come within this classification and is not an operation for a State, governmental or public

purpose. We think the act quite clearly so classes and characterizes it. We have quoted its declaration of "Corporate Purpose." And, in Section 3, it is declared to be a " 'Municipality' or public corporation in perpetuity under its corporate name," etc. A municipal corporation is a body established by law, "chiefly to regulate the local internal affairs of the city, town, or *district* incorporated," adopting defining words from *State* v. *Knoxville*, 115 Tenn., 175, 90 S. W., 289, 293, and italicizing "district." And it was held in *Redistricting Cases*, 111 Tenn., 234, 80 S. W., 750, that municipal corporations are "arms of government," are "means or instrumentalities of the State government," etc. (Headnote 12). It is elementary that the Legislature may call such bodies what it pleases, and may give and take away as it chooses their powers and privileges. Here it has chosen to make provision for the creation and operation, in the manifest interest of the public, in these days of necessity for water, light, fire and sewer protection, of a somewhat new and quite limited in scope corporate instrumentality. We find no restriction upon legislative authority as to the size, powers or field of operations, in the creation of one of its arms or instrumentalities. We have various illustrations of analogous agencies which this Court has recognized the power of the legislation to create, which necessarily had exemption from taxation. For instance, discussing the organization of a drainage district, in his opinion in *Pritchard* v. *Johnson-Toby-Construction Co.*, 155 Tenn., 571, at page 576, 296 S. W., 17, at page 19, Mr. Justice SWIGGART said:

"It is our opinion that the board of directors of the drainage district, appointed under the authority of the statute, and vested with the general control and manage-

134

ment of the business affairs of the district, with power to make contracts for improvements, etc., must be considered as a *quasi* public corporation, charged with the duty of executing a governmental purpose as a governmental agency. *Miller* v. *Washington County*, 143 Tenn., 488, 226 S. W., 199; *Board of Park Commissioners* v. *Nashville*, 134 Tenn., 612, 635, 639, 185 S. W., 694.''

The cases he cites are in point, one a road district and the other a park. And see *Knoxville Housing Authority* v. *Knoxville*, 174 Tenn., 76, 123 S. W. (2d), 1085; *University of Tennessee* v. *People's Bank et al.*, 157 Tenn., 87, 6 S. W. (2d), 328.

■ Counsel argue a second proposition under this ground of demurrer even more confidently. They call attention to a provision in Section 5 to the effect that the District may extend itself beyond its corporate boundaries, in acquisition of property and furnishing of its services. Counsel cite *Knoxville* v. *Park City*, 130 Tenn., 626, 172 S. W., 286, L. R. A., 1915D, 1103, but as far as that case went was to declare taxable the outside services. There was no holding that the charter of the City was thereby rendered unconstitutional. The rendering of this service, although outside, was still, probably, within the ''public purpose'' doctrine, under *Johnson City* v. *Weeks*, 133 Tenn., 277, 180 S. W., 327, 3 A. L. R., 1431. But, it is sufficient response to this point that demurrants were in no position of interest in the question which authorized them to raise it. In the first place, there is no showing whatever that such an extension has been made, and, in the second place, we are unable to see how such an extension could possibly militate to the disadvantage of the State and County taxing authorities in the discharge of their duties.

■ Appellants direct their attack against the provision exempting the bonds of this District from taxation. What has been said touching the validity of the tax exemption otherwise applies likewise to the bonds. But, it may also be said that the present suit involves no taxes of this nature, and, therefore, the question may not be properly now made.

Several other grounds of demurrer were added before the cause was heard by the Chancellor. We discuss them briefly.

■ While several paragraphs are used in the demurrer and in the assignments, the questions made appear to be three. The second, third and fourth grounds challenge as unlawful a delegation of power to the County Judge or Chairman of the County Court to receive and act upon a petition signed by not less than twenty-five owners of real property residing within the boundaries of any proposed district in which shall be set out the necessity for the utility service sought to be supplied, the proposed corporate name and boundaries of the district, estimate of cost and the nomination of three residents of the district for appointment as Commissioners who will form the Board to conduct the utility. Criticism is particularly directed to the clause which provides that if at a public hearing this official ''finds (a) that the public convenience and necessity requires the creation of the district and (b) that the creation of the district is economically sound and desirable, he shall enter an order of the Court so finding, approving the creation of the district,'' etc. The insistence is that this vests too unlimited a discretion without proper definition of ''public convenience and necessity'' and thus goes beyond the proper power of delegation by the Legislature.

█ This court has recently again emphasized that a delegation of power will not be declared unconstitutional unless it clearly appears that the power delegated is purely legislative. In *Holliston Mills* v. *McGuffin,* 177 Tenn. 1, at page 14, 145 S. W. (2d), 1, at page 6, we quoted with approval what we had recently said in *State ex rel.* v. *Knox County,* 165 Tenn., 319, 54 S. W. (2d), 973, on this subject. And in that case we had quoted from the opinion of Mr. Justice HARLAN in *Field* v. *Clark,* 143 U. S., 649, 12 S. Ct., 495, 36 L. Ed., 294, as follows:

" 'The true distinction,' as Judge RANNEY, speaking for the Supreme Court of Ohio, has well said, 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' *Cincinnati, W. & Z. R. Co.* v. *Clinton County Com'rs,* 1 Ohio St., (77), 88. In *Moers* v. *Reading,* 21 Pa., (188), 202, the language of the court was: 'Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such discretion is the making of the law.' "

In these days of constantly expanding by Congress and the Legislatures of the authority of administrative bodies and representatives, what has been done here is not beyond the pale. It is true that no details are set forth for the control of the judgment of the County Judge in passing upon these applications, but, in the first place, the phrase, "the public convenience and necessity," has come to acquire a fairly definite meaning, and, in the sec-

ond place, the question whether or not the proposed district is "economically sound and desirable" is a matter which may fairly be passed upon by the official in the light of all the circumstances, surroundings and representations which will be presented to him in each case arising. It would be difficult to incorporate in the act all the matters which it may be proper for him to consider. Moreover, it appears that provision is made in the same section of the act for an appeal by petitioners who feel themselves aggrieved or prejudiced by the finding and adjudication of the County Judge to the Circuit Court. We do not feel called upon to overrule the action of the Legislature in this regard. If it is desired to review other cases in this jurisdiction upholding legislative acts delegating authority to individual executives and administrative units, they will be found in such of our cases as *Leeper* v. *State,* 103 Tenn., 500, 53 S. W., 962, 48 L. R. A., 167; *Richardson* v. *Reese,* 165 Tenn., 661, 57 S. W. (2d), 797; *State Board* v. *Rodgers,* 167 Tenn., 374, 69 S. W. (2d), 1093; and the leading and well known case of *Schechter Poultry Corp.* v. *United States,* 295 U. S., 495, 55 S. Ct., 837, 79 L. Ed., 1570, 97 A. L. R., 947.

Complaint is also made of the provisions of the act hereinbefore mentioned for the appointment of the members of a Board of Commissioners and their successors. The original Board is appointed under Section 4 upon nomination in the petition and these serve until their successors are elected and qualified. The act provides that any vacancy shall be filled by the remaining Commissioners and that should they not agree the County Judge shall fill the vacancy. It is this last provision which appears to be particularly criticized. Counsel appear to concede that the general method of appointment was

upheld by this court in *Tennessee Electric Power Co.* v. *Chattanooga,* 172 Tenn., 505, 114 S. W. (2d), 441, and in *Board of Park Commissioners* v. *Nashville,* 134 Tenn., 612, 185 S. W., 694, but apparently seek to distinguish these cases upon the alleged ground that no provision is made "for ouster or removal of the Commissioners," etc. The reply brief we think pertinently calls attention to the general Ouster Law, Code, Sections 1877-1899, which covers such officers. It must be borne in mind that this court has again and again recognized that our Constitution devolves upon the Legislature full power to provide for the manner of election of all officials, except in those few cases in which the Constitution has provided specific directions.

Finally, in general terms it is suggested, rather than urged, that we have here created a "monopoly" in violation of Article 1, Section 22, of our Constitution, which prohibits perpetuities and monopolies. Little argument is furnished, the brief going scarcely further than a general statement of this contention, and we are not impressed thereby.

Upon review of all the assignments, we are not persuaded that any of the objections raised are sufficient to offset the strong presumption which this court properly indulges in favor of the constitutionality of every legislative enactment. The judgment of the Chancellor is affirmed and the cause will be remanded for further proceedings as to the recovery sought for taxes paid under protest.

It is stated at bar that upon the hearing below of this cause, which arose in Part I of the Chancery Court of Davidson County, a companion cause, styled *Madison Suburban Utility District of Davidson County* v. *Porter*

*Dunlap, Commissioner, et al.,* originating in Part II of the Chancery Court of Davidson County, was heard at the same time, the two learned Chancellors sitting together. While this second cause was a suit brought to enjoin the Railroad and Public Utilities Commission, Honorable PORTER DUNLAP being Chairman, from levying an assessment on the property of the Utility complainant in that cause, the demurrer filed therein raised practically the same issues and, therefore, the questions heard and determined by the Chancellors were the same. In that case, also, an appeal was taken to this Court and the decision now announced in the case of the *First Suburban Water Utility District* v. *McCanless, Commissioner, et al.,* will control and dispose of the appeal in the other cause named, in which the decree is affirmed.