970 F.2d 199
 FOSTER WHEELER ENERGY CORPORATION; Foster Wheeler Knox
County, Inc., Plaintiffs-Appellees,
v.
The METROPOLITAN KNOX SOLID WASTE AUTHORITY, INC., Defendant,
City of Knoxville, Tennessee; the County of Knox,
Tennessee, Defendants-Appellants.
 No. 91-6129.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 9, 1992.
Decided July 23, 1992.
Order Denying Rehearing and
Clarifying Opinion
Sept. 2, 1992.
 
 Charles J. Gearhiser (briefed), Robert Lockaby, Jr. (argued) Michael Anderson, Gearhiser, Peters & Horton, Chatanooga, Tenn., for plaintiffs-appellees.
 John A. Lucas (argued and briefed), J. Burns Newsome, Hunton & Williams, Thomas A. Varlan, Director of Law, City of Knoxville Law Dept., Knoxville, Tenn., for defendant-appellant City of Knoxville, Tenn.
 Richard T. Beeler, John E. Owings (briefed), Knox County Law Director's Office, Tenn., for defendant-appellant County of Knox, Tenn.
 Before: KEITH and SUHRHEINRICH, Circuit Judges; and CONTIE, Senior Circuit Judge.
 CONTIE, Senior Circuit Judge.
 
 
 1
 Defendants, the City of Knoxville, and Knox County, Tennessee, appeal an interlocutory order, pursuant to 28 U.S.C. § 1292(b), denying their motion to dismiss this diversity contract action on grounds that they were not liable for the contractual obligations of the separately incorporated Waste Authority.
 
 I.
 
 2
 This lawsuit arises out of the proposed construction of a solid waste incinerator (the "Facility") in Knox County, Tennessee. For this purpose, the City of Knoxville and the county jointly created the Metropolitan Knox Solid Waste Authority ("Waste Authority"), a nonprofit corporation, on July 30, 1986. Foster Wheeler Energy Corporation contracted with the Waste Authority to design, construct and test the Facility (the "DCT Agreement"), and Foster Wheeler Knox County, Inc. entered a separate agreement with the Waste Authority to operate and maintain the Facility (the "O & M Agreement"). The plaintiffs contracted with the Waste Authority as a separate entity; there was no direct contractual relationship with the city or county.
 
 
 3
 In furtherance of this project, the city and county adopted resolutions declaring their intent to proceed with the Facility "for the benefit of the residents of the county [and] city." In July 1986, the city and county entered into a Cooperation Agreement as authorized by the Interlocal Cooperation Act, Tenn.Code Ann. §§ 12-9-101 et seq. In this agreement, the city and county agreed to take all necessary action "to cause a solid waste disposal and energy recovery Facility to be financed, constructed, owned and operated" by the Waste Authority.
 
 
 4
 In August 1986, the Waste Authority was incorporated as a Tennessee non-profit corporation to construct and operate the incinerator. The city and county both appointed members to the Waste Authority's board of directors. The board was responsible for the construction, operation and maintenance of the Facility, although the county could initiate proceedings to remove board members "for cause." The city and county played no other role in the day-to-day operations of the Facility.
 
 
 5
 Pursuant to the approval of the city council and county commission, the Waste Authority issued revenue bonds in the amount of $174,995,000 to finance the Facility. Although the full cooperation of the city and county was necessary to issue these bonds, they were the sole obligation of the Waste Authority and not the city or county. These bonds were to be paid off with revenues generated from the Waste Authority. No taxpayer money was to be used to pay the bonds.
 
 
 6
 The Waste Authority remarketed the bonds in April 1989, such that the bonds were due to be remarketed again on April 19, 1990. The Waste Authority insured the bonds through a municipal bond insurer for the anticipated April 19, 1990 remarketing.
 
 
 7
 Almost three years after the initial issuance of the bonds, the Waste Authority contracted with plaintiffs to construct the Facility (the DCT Agreement) and to operate and manage the Facility (the O & M Agreement). The DCT Agreement was to pay plaintiffs $86,824,000 for its design and construction efforts. The O & M Agreement would pay plaintiffs a monthly operating fee, plus a percentage of revenues. Unfortunately, the project never proceeded to this stage.
 
 
 8
 Shortly before the scheduled April 19, 1990 remarketing of the bonds, the city withdrew from the project. The plaintiffs allege that an announcement by the city's mayor that the city was withdrawing its support for the Facility led to a withdrawal of insurance for the Waste Authority's bonds. The bonds were then redeemed.
 
 
 9
 Foster Wheeler then sued the Waste Authority, the city and the county in district court for breach of the DCT and O & M Agreements. The plaintiffs alleged, inter alia, that the city and county were liable even though they were not parties to the agreements, because they "dominated and controlled" the Waste Authority causing it to breach its contracts. They also alleged that the Waste Authority constituted nothing more than the alter ego of the city and county, and thus the court should "pierce the corporate veil" of the corporation to reach the true wrongdoers--the city and county.
 
 
 10
 The defendants moved to dismiss the plaintiffs' complaint for failure to state a claim upon which relief could be granted. The plaintiffs responded by filing their first amended complaint, standing only on the alter ego/corporate veil claim. The defendants moved to dismiss the first amended complaint for failure to state a claim.
 
 
 11
 On June 20, 1991 the court entered a memorandum opinion and order denying the defendants' motions to dismiss. The district court, after apparently rejecting the viability of plaintiffs' alter ego/corporate veil claim, nevertheless found that the city and county may be liable under a type of undefined agency theory. The court cited numerous cases which held that corporations created by a municipality were mere agencies or instrumentalities of the government, and therefore the district court reasoned that city and county should be liable on the contractual obligations of the Waste Authority in this case. In addition, the court cited numerous Tennessee statutes which purport to prevent a city or county from escaping liability when they jointly undertake various cooperative ventures. It therefore denied the city's and county's motions to dismiss.
 
 
 12
 The city and county thereafter sought, and were granted, an order to certify this case for interlocutory appeal. The district court felt that this case presented complex issues of law, and it was "not entirely convinced of the correctness of its holdings or of its analysis of the issues." Joint Appendix at 420. This circuit granted defendants' petition for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiffs also petitioned for interlocutory appeal, however, this circuit denied that petition as untimely.
 
 II.
 
 13
 This case comes to us on defendants' petition for interlocutory review. 28 U.S.C. § 1292(b). Defendants seek review of the district court's denial of its motion to dismiss, arguing that the district court's proposed theory of liability was not supported by the law. Plaintiffs also sought interlocutory appeal, but this petition was denied as untimely. We may nevertheless address the issues raised by the defendants as well as the plaintiffs, because the reviewing court is not restricted to deciding only those issues raised in this appeal, but instead may address all matters in the suit. Walsh v. Ford Motor Co., 807 F.2d 1000, 1002 n. 2 (D.C.Cir.1986), cert. denied, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987).
 
 A.
 
 14
 Plaintiffs contend that we are bound by the standard of review governing the review of dismissals ordered pursuant to Fed.R.Civ.P., Rule 12(b)(6). We disagree. The district court did not grant defendants' motion to dismiss, and an order denying a motion to dismiss is not appealable. Webster v. Sowders, 846 F.2d 1032, 1039 (6th Cir.1988). Since this appeal was not taken from an order of dismissal under Rule 12(b)(6), but instead concerns the legal conclusions which justified the court's denial of the motion to dismiss, we are not governed by the Rule 12(b)(6) standard of review. On interlocutory appeal the appellate court has no authority to review disputed questions of fact.[1] Yalkut v. Gemignani, 873 F.2d 31 (2d Cir.1989); White v. Frank, 855 F.2d 956 (2d Cir.1988); Link v. Mercedes-Benz of North America, Inc., 550 F.2d 860 (3d Cir.), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Therefore, our review of the district court's decision is limited to pure questions of law. Miller v. Bolger, 802 F.2d 660, 666-67 (3d Cir.1986).
 
 B.
 
 15
 In the instant case, the plaintiffs' first amended complaint alleged "the Waste Authority, at the direction of its executive committee, and as a result of the complete dominion and control of the Waste Authority by the city and county ... executed an agreement with the city and county on June 1, 1990 divesting itself of any power or authority to comply with the terms of the DCT Agreement and O & M Agreement." Therefore, plaintiffs alleged that the Waste Authority was merely acting as the alter ego of the city and county, and thus the "corporate veil" of the Waste Authority should be pierced and contractual liability imposed on the city and county. The defendants argue that the corporate veil theory is not applicable in this context, and even if it was applicable it could not be invoked in this case because the defendants did not completely dominate the Waste Authority, nor did they commit any fraud or wrongdoing.
 
 
 16
 In response to the defendants' motion to dismiss, the district court held:
 
 
 17
 No Tennessee law can be found that would prevent the corporate veil of a nonprofit corporation to be pierced to reach its members for the same reasons that the veil of a business corporation could be pierced to reach its stockholders, and § 48-56-205(a) recognizes that such a suit can be maintained.
 
 
 18
 Joint Appendix at 382. We concur with the district court's assessment, as there is no authority which explicitly precludes an application of the corporate veil theory in this setting. On the other hand, there is no Tennessee case law which gives a plaintiff the express right to pierce the corporate veil of a nonprofit corporation in the municipal context. We believe that the law's silence on this issue requires us to look to the purposes behind the corporate veil doctrine to determine whether it should be applied in this case.
 
 
 19
 A corporation has an existence separate and distinct from that of the owners. However, this separate entity may be disregarded in the interests of justice where it can be shown that the corporation is merely a "sham" or "dummy," or is being used as an instrumentality for the benefit of its owners. Electric Power Bd. v. St. Joseph Valley Structural Steel, 691 S.W.2d 522, 526 (Tenn.1985). This theory will be applied to place liability on the stockholders, or in a parent-subsidiary relationship, to hold the parent liable in spite of the subsidiary's independent status. See Continental Bankers Life Ins. Co. v. Bank of Alamo, 578 S.W.2d 625 (Tenn.1979). In either case, however, the theory is designed to disregard a sham corporation and to impose liability on the corporate owners, who are controlling the corporation for their own benefit.
 
 
 20
 In the present case, however, the city and county were not equity owners in the Waste Authority, as the project was financed with revenue bonds. Simply because the city and county placed directors on the Waste Authority's board, and agreed to cooperate and use their best efforts to make the Waste Authority succeed, does not, in our view, create a sufficient nexus between the city, the county and the Waste Authority on which to predicate liability. This court is reluctant to extend the corporate veil theory to the present set of facts absent more specific guidance from the Tennessee courts. Moreover, we understand this theory to apply primarily to prevent fraud or other tortious wrongdoing. Stigall v. Wickes Machinery Corp., 801 S.W.2d 507, 511 (Tenn.1990); See, e.g., St. Joseph Valley, 691 S.W.2d at 526 (corporate veil may be pierced where corporate status used to commit fraud or wrong, to perpetrate the violation of a legal duty or to commit a dishonest or unjust act). Plaintiffs have made no allegations of fraud in this case. We do not believe this theory should be expanded to relieve creditors of contractual obligations and limitations of which they were fully aware at the time they entered into a contract.
 
 
 21
 Furthermore, Tenn.Code Ann. § 48-56-205(a), relied upon by the district court, does not demand a different result. That section allows a creditor to hold a "member" of a nonprofit corporation personally liable. However, in the present case, neither the city nor the county are designated as members of the Waste Authority Corporation. See Tenn.Code Ann. § 48-56-103. In fact, the Waste Authority's corporate charter states that it was created without "shareholders or members." Therefore, we find, as a matter of law, that the corporate veil of the Waste Authority cannot be pierced in this case.
 
 III.
 
 22
 In the alternative, the district court reasoned that liability may be predicated on section 12-9-104 of the Interlocal Cooperation Act (the "Act"). Section 12-9-104(e) provides:
 
 
 23
 No agreement made pursuant to this chapter shall relieve any public agency of any obligation or responsibility imposed upon it by law....
 
 
 24
 Tenn.Code Ann. § 12-9-104(e). The city and county jointly participated in creating the Waste Authority pursuant to this section of the Act. The district court noted that the Interlocal Cooperation Act, however, contains no provision insulating cities or counties from liability. When read along side other chapters of the Code which specifically relieve municipalities from liability, the district court suggested that had the Tennessee legislature intended to relieve political subdivisions of liability under the Interlocal Cooperation Act, they would have specifically included such a provision in the Act.
 
 
 25
 We agree that the district court followed a proper canon of statutory construction, but nevertheless disagree with its result. The Interlocal Cooperation Act provides no substantive rights or obligations. In our view, it is simply a procedural statute which enables political subdivisions to combine efforts to achieve common goals. Section 12-9-104(a) states that a political subdivision may only exercise those rights under the Act which they are privileged or capable of exercising under state law or which are otherwise vested in their governing bodies. Tenn.Code Ann. § 12-9-104(a). Since the Act provides no independent substantive protections, the legislature's failure to include an exculpatory clause does not imply that the legislative branch intended to impose liability on political subdivisions which join together under this Act. Rather, the absence of a provision limiting a municipality's liability under the Act signifies only that the question of liability must be answered by resort to independent provisions of state law.
 
 
 26
 We recognize that the Act prohibits political subdivisions from absolving themselves of "any obligation or responsibility imposed on it by law." Tenn.Code Ann. § 12-9-104(e) (emphasis added). In other words, the Act prohibits counties or municipalities from shielding themselves from liability by interposing a cooperation agreement. However, this prohibition presumes that there is a pre-existing legal obligation which arises from state law. The Act cannot be read as imposing any new rights or obligations on counties or municipalities independent of other sources of state law.
 
 
 27
 As the above discussion illustrates, the Interlocal Cooperation Act is a procedural statute which enables political subdivisions to jointly undertake the exercise of powers and privileges with which they are vested. The statute is devoid of any substantive protections, and requires that we look elsewhere to determine whether the city or county, in the present case, has avoided an "obligation or responsibility imposed on it by law." Id.
 
 A.
 
 28
 The district court, citing a broad spectrum of Tennessee decisions, held that:
 
 
 29
 Tennessee law does not generally recognize that the separate status of a subsidiary corporation of a municipal corporation insulates it from liability and has always held that such entities are public instrumentalities, absent an express statutory provision to the contrary.
 
 
 30
 Joint Appendix at 416. Based on the premise that the Waste Authority is merely a public instrumentality of the city and county, the district court concluded that these political subdivisions were liable for the Waste Authority's contractual obligations.
 
 
 31
 While it may be true that the courts of Tennessee have consistently held that entities like the Waste Authority exist for a public purpose and are public instrumentalities, no court has gone so far as to suggest that a municipality can be bound by contracts entered into by a corporation and a third party. Johnson v. Chattanooga-Hamilton County Hosp. Auth., 749 S.W.2d 36, 37 (Tenn.1988) (public non-profit corporation considered a public instrumentality for purposes of workers' compensation laws); Metropolitan Dev. & Housing Agency v. Leech, 591 S.W.2d 427, 428-29 (Tenn.1979) (housing authority deemed a "municipal agency," yet holding that authority alone was liable on obligations); Chattanooga-Hamilton County Hospital Auth. v. City of Chattanooga, 580 S.W.2d 322, 328 (Tenn.1979) (hospital authority a "public instrumentality acting on behalf of county," and county council approval needed to validate changes proposed by Tennessee legislature); Fort Sanders Presbyterian Hosp. v. Health & Educ. Facilities Bd., 224 Tenn. 240, 453 S.W.2d 771, 774-75 (1970) (Health and Education Board an "agency or instrumentality" and thus its bonds are exempt from taxation. Simply because board mortgaged public property to support bond issue does not mean municipality lent its credit to transaction, and thus municipality is not directly liable.)
 
 
 32
 Plaintiffs argue that, "taken together," the cases cited by the district court "stand generally for the proposition that a subsidiary corporation formed by a municipality is nothing more than [a] mere agency or instrumentality" of the municipality. Appellees' Brief at 26. Plaintiffs cite Tennessee Electric Power Co. v. City of Chattanooga, 172 Tenn. 505, 114 S.W.2d 441 (1937) and Knoxville Housing Authority, Inc. v. City of Knoxville, 174 Tenn. 76, 123 S.W.2d 1085 (1939) in support of the district court's theory of liability. Although these cases affirm the proposition that subsidiary corporations of a municipality may be an agent of the municipality for some purposes, one cannot conclude from either case that a city is thereby liable for the contractual obligations of the corporation.
 
 
 33
 Neither the district court, nor the plaintiffs, cite to any case law which has specifically held a municipality or county to answer for the contractual obligations of a separately incorporated non-profit corporation like the Waste Authority. In fact, the case that the district found to be most similar on its facts, is easily distinguished. In Hospital Management Assoc. v. Coffee County, 688 S.W.2d 419 (Tenn.1985), the county and the Hospital Management Association entered into a development agreement. There was no independent corporation, like the Waste Authority, contracting with the obligee on behalf of the county. The Tennessee Supreme Court held the county liable on the contract. In the present case, by contrast, neither the city nor the county was a party to the contract, and therefore, are not bound by the contract under the theory of the Coffee County case.
 
 
 34
 Furthermore, our review of Tennessee law convinces us that the courts of Tennessee would not adopt a rule such as the one proposed by the district court. Absent a clear indication from the courts of the state, we are reluctant to create any broad new rules of law which would allow the plaintiffs to look to the city or county to answer for the contractual liabilities of the Waste Authority.
 
 B.
 
 35
 Similarly, the plaintiffs are unable to point to any provision of the Tennessee Code which would allow them to circumvent the Waste Authority's corporate status, and make the city and county answerable for its contractual obligations.
 
 
 36
 The parties are in agreement that the Waste Authority was incorporated as a nonprofit corporation pursuant to the Tennessee Nonprofit Corporation Act. Tenn.Code Ann. §§ 48-51-101 et seq. This act permits a nonprofit corporation to be formed with or without members.[2] Tenn.Code Ann. § 48-56-103 ("A corporation is not required to have members."). In the present case, Article V of the Waste Authority's corporate charter specifies that the corporation was to be formed on a "non-stock basis" without "shareholders or members of the corporation."
 
 
 37
 Defendants point out that the Nonprofit Corporation Act contains an exculpatory provision which, they argue, limits the liability of the city and county in this case. Section 48-56-203 reads:
 
 
 38
 A member of a corporation is not, as such, personally liable for the acts, debts, liabilities, or obligations of the corporation.
 
 
 39
 Tenn.Code Ann. § 48-56-203. Had the city and county designated themselves as "members" of the Waste Authority corporation, this section would have relieved them of all contractual liability. However, the city and county opted to form the corporation without members, and so they cannot invoke this provision to insulate themselves from liability here.
 
 
 40
 However, simply because this statutory provision does not shield the city and county from liability does not mean that they are now liable on the Waste Authority's contracts. We refuse to read into the Nonprofit Corporation Act a provision which provides an affirmative right to hold political subdivisions answerable for the contractual obligations of independent corporations. We agree that the Nonprofit Corporation Act may not prohibit recourse against a political subdivision in all circumstances; however, plaintiffs have completely failed to identify any theory or cause of action by which the municipality and county are liable in this case. We therefore believe that the Waste Authority's corporate status must be respected.
 
 
 41
 It is clear that the plaintiffs contracted only with the Waste Authority and they knew that the city and county were not parties to the contract. Given the circumstances of this case, we see no reason to re-write the contract allowing plaintiffs to recover from the city or county. Absent any allegations of fraud or other tortious wrongdoing, we hold that the plaintiffs may look no further than the Waste Authority itself for recovery on the DCT and O & M Agreements.
 
 IV.
 
 42
 For the foregoing reasons, the decision of the district court is hereby REVERSED, and this case is remanded to the district court with instructions to DISMISS the plaintiffs' complaint for failure to state a claim upon which relief can be granted.
 
 ORDER
 
 43
 Sept. 2, 1992.
 
 
 44
 Plaintiffs filed a petition for rehearing on August 6, 1992 from this court's July 23, 1992 opinion reversing the district court's decision and remanding the case with instructions to dismiss the plaintiffs' complaint for failure to state a claim upon which relief could be granted. Foster Wheeler Energy Corp. v. City of Knoxville, No. 91-6129 (6th Cir. July 23, 1992).
 
 
 45
 After careful consideration, the petition for rehearing is denied. We write, however, to clarify our disposition of the issues decided in our original opinion. The appeal concerned only claims raised by plaintiffs against the city and county. The Waste Authority was not a party to the appeal. Therefore, we wish to emphasize that our order directed only that the district court dismiss the claims brought against the city and county. Insofar as the complaint addressed claims against the Waste Authority itself, our July 23, 1992 opinion does not require the district court to dismiss those claims, as they were not presented to this court on appeal.
 
 
 46
 It is ORDERED that the petition for rehearing is denied.
 
 
 
 [1]
 28 U.S.C. § 1292(b) addresses itself to "controlling question[s] of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." (emphasis added)
 
 
 [2]
 A "member" is "any person or persons who on more than one (1) occasion, pursuant to a provision in the corporation's charter or bylaws, have the right to vote for the election of a director or directors;
 (B) A person is not a member by virtue of any of the following:
 (i) Any rights such person has as a delegate;
 (ii) Any rights such person has to designate a director or directors; or
 (iii) Any rights such person has as a director."
 Tenn.Code Ann. § 48-51-201(21).