**STATE of Tennessee, Appellant,**

v.

**Ray EDWARDS, Appellee.**

Supreme Court of Tennessee.

Nov. 6, 1978.

---

2. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

Michael J. Passino, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for appellant.

Jack H. McPherson, Jr., Kingston, for appellee.

## OPINION

COOPER, Justice.

This case is before us on appeal from a judgment by the Roane County Criminal Court, which quashed an indictment that charged a defendant with selling a controlled substance in violation of the Tennessee Drug Control Act.

In general, the Tennessee Drug Control Act, T.C.A. §§ 52–1408—52–1448, regulates the manufacture, distribution, sale, and possession of certain materials defined by the Act to be "controlled substances"—materials that, in common parlance, would for the most part be referred to as drugs. These substances are classified in several schedules, depending on the danger presented by their abuse. Penalties appropriate to the severity of the offense and keyed for this purpose to the schedules are imposed for violations of the Act. *See, e. g.,* T.C.A. § 52–1432. Although many substances were placed in the schedules when the Act was first passed, the legislature did not intend that the contents of the schedules necessarily would remain unchanged. Under the provisions of T.C.A. § 52–1410,

[t]he commissioner of mental health and mental retardation upon the agreement of the commissioner of public health . . may add substances to or delete or reschedule all substances enumerated in the schedules . . . .

In making such a determination, the commissioners are instructed to consider, with respect to each substance, a number of specific factors.[1] In addition, to guide the placement of a given substance on a particular schedule, the legislature has set forth specific criteria relating the various schedules to each other. For example, with respect to schedule IV, T.C.A. § 52–1418 provides:

[The Commissioners] shall place a substance in schedule IV if [it is found] that:

(1) The substance has a low potential for abuse relative to substances in schedule III;

(2) The substance has a currently accepted medical use in treatment in the United States; and

(3) Abuse of the substance may lead to limited physical dependence or psychological dependence relative to the substances in schedule III.

Under the procedure just outlined, the Commissioners added diazepam, the substance which under the indictment the defendant was charged with selling, to schedule IV. Rules and Regulations, State of Tennessee, 0940–8–8.08. The trial judge found the provisions authorizing this addition to be an unconstitutional delegation of legislative authority, and quashed the indictment. We disagree.

At the outset, it should be noted that the area of drug control is one in which some form of delegation by the legislature of discretionary authority to an agency is peculiarly necessary. To be effective, a drug control program must be reviewed continuously, and adjusted when necessary, in the light both of new drugs coming on to the market, and of new knowledge concerning old drugs. The legislature, by its nature, has neither the facilities nor the expertise to assume this task. Furthermore, because the legislature is not in continuous session, it cannot give the drug control program constant attention, the lack of which could result in a dangerous drug being widely disseminated throughout the state before effective controls were instituted. *Cf. United States v. Pastor*, 557 F.2d 930 (2d Cir. 1977); *Iske v. United States*, 396 F.2d 28 (10th Cir. 1968).

In general, although the legislature may not delegate power that is "purely legislative," *First Suburban Water Utility District v. McCanless*, 177 Tenn. 128, 146 S.W.2d 948 (1941), it may, with certain qualifications, delegate to an administrative agency the authority necessary to implement the expressed policy and program of a given statute. *Cf. American Power Co. v. S. E. C.*, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946); *Currin v. Wallace*, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939). In so far as is material to the instant case, the qualifications referred to require that the legislature establish adequate standards to guide the agency in its exercise of the delegated authority, and that there be sufficient safeguards to prevent arbitrary action by the agency. *Department of Public Welfare v. National Help "U" Assoc.*, 197 Tenn. 8, 270 S.W.2d 337 (1954). *Cf. Kugler v. Yocum*, 69 Cal.2d 371, 71 Cal.Rptr. 687, 445 P.2d 303 (1968); *Elk Run Telephone Co. v. General*

---

1. T.C.A. § 52–1410(a) provides in pertinent part:

In making a determination regarding a substance, the commissioner of mental health and mental retardation upon the agreement of the commissioner of public health shall consider the following:

(1) The actual or relative potential for abuse;

(2) The scientific evidence of its pharmacological effect, if known;

(3) The state of current scientific knowledge regarding the substance;

(4) The history and current pattern of abuse;

(5) The scope, duration, and significance of abuse;

(6) The risk to the public health;

(7) The potential of the substance to produce psychic or physiological dependence liability; and

(8) Whether the substance is an immediate precursor of a substance already controlled under this section.

*Telephone Co.*, 160 N.W.2d 311 (Iowa 1968); *Department of Health v. Owens-Corning Fiberglass*, 100 N.J.Super. 366, 242 A.2d 21 (1968).

These criteria are met by the provisions of the Drug Control Act under consideration here. As we noted previously, T.C.A. § 52–1410(a) sets forth a number of specific standards that serve to delineate the general policy of the Act. In addition, T.C.A. § 52–1418, for schedule IV, and the analogous provisions for the other schedules, provide specific criteria for the placement of a substance within a given schedule. Taken as a whole, this statutory scheme is more than adequate to provide the commissioners with the requisite guidance to determine and effect the will of the legislature. A number of other jurisdictions have reached the same result upon the review of similar statutes.[2] *United States v. Pastor*, 557 F.2d 930 (2d Cir. 1977); *Cassell v. State*, 55 Ala.App. 502, 317 So.2d 348 (1975); *People v. Avery*, 67 Ill.2d 182, 9 Ill.Dec. 645, 367 N.E.2d 79 (1977) (reversed on other grounds); *People v. Uriel*, 76 Mich. App. 102, 255 N.W.2d 788 (1977); *State v. King*, Minn., 257 N.W.2d 693 (1977); *State v. Lisk*, 21 N.C.App. 474, 204 S.W.2d 868 (1974); *State v. Brown*, 576 P.2d 776 (Okl. Cr.1978). Furthermore, the manner in which the contents of the various schedules are adjusted provides, on its face, sufficient procedural safeguards to prevent arbitrary exercise of the delegated power. *See* T.C.A. § 52–1410; §§ 4–507—4–527. There is no indication in the record here that the procedures prescribed by those sections were not followed when diazepam was listed as a scheduled substance.

Although it did not form a basis for the trial judge's decision, it has been argued before this court that, as diazepam is not one of the controlled substances listed in the Code, the defendant did not have fair notice that its sale was a crime. Of course, if the defendant did not have fair notice that the conduct upon which his indictment is based was unlawful, that indictment could not stand. *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). However, that situation is not presented here. The defendant has been indicted for conduct clearly proscribed by a duly enacted statute, as amplified by the regulations issued pursuant to it, to which the statute makes reference. There is no indication in the record before us that the regulations defining the offense for which the defendant was indicted were not reasonably accessible to any person who would seek them out. *Compare State v. King*, Minn., 257 N.W.2d 693 (1977) with *State v. Dougall*, 89 Wash.2d 118, 570 P.2d 135 (1977) and *People v. Avery*, 67 Ill.2d 182, 9 Ill.Dec. 645, 367 N.E.2d 79 (1977). Therefore, the defendant must be presumed to have known the content of those regulations, and will be held accountable for any violation of them.[3] *McKnight v. State*, 171 Tenn. 574, 106 S.W.2d 556 (1937); *Atkins v. State*, 95 Tenn. 474, 32 S.W. 391 (1895).

The judgment of the trial court is reversed, and the cause is remanded for trial.

HENRY, C. J., and FONES, BROCK and HARBISON, JJ., concur.

---

2. The Tennessee Drug Control Act is patterned after the Uniform Controlled Substances Act, which has been adopted, with various modifications, in 43 states, Puerto Rico, and the Virgin Islands. 9 U.L.A., Supp. 1974–77, at 47. The Uniform Act, in turn, is based in large measure on the Federal Controlled Substances Act, 21 U.S.C. § 801 *et seq.* 9 U.L.A., at 146.

3. Although not strictly relevant to the question of whether the defendant had notice that his conduct was a violation of state law, in all fairness it should be noted that the sale of diazepam is an offense against federal law as well. 21 C.F.R. § 1308.14.