IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 15, 2010 Session

## RANDALL PHILLIP BOYCE v. TENNESSEE PEACE OFFICER STANDARDS AND TRAINING COMMISSION

Appeal from the Chancery Court for Davidson County
No. 09-296-IV      Russell T. Perkins, Chancellor

No. M2010-00211-COA-R3-CV - Filed February 10, 2011

Sheriff filed a petition for judicial review regarding a decision of the Peace Officer Standards and Training Commission (POST) denying the sheriff's request for certification. The sheriff argued that his basic recruit training in 1976, when he was a sheriff's deputy, was equivalent to the Tennessee Law Enforcement Training Academy recruit training required by POST. The chancellor ordered POST to issue a certificate of compliance to the sheriff. Finding no error in POST's decision, we reverse the chancellor's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; William Randall Lundy, Jr., Assistant Attorney General, Law Enforcement and Special Prosecutions Division, for the appellant, Tennessee Peace Officer Standards and Training Commission.

Ben H. Cantrell and Walter Franklin Nichols, Nashville, Tennessee, for the appellee, Randall Phillip Boyce.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Randall Phillip Boyce was elected Sheriff of Bedford County and took office on September 1, 2006. When elected, Boyce did not possess a valid and current peace officer certification issued by the Peace Officer Standards and Training Commission ("POST") and

therefore could not obtain a sheriff's certificate of compliance as required by statute.[1] Without certification, Boyce cannot receive a pay supplement and cannot qualify for election to a second term of office as sheriff. *See* Tenn. Code Ann. § 8-8-102(d)(1) and (2). Prior to the request for certification at issue in this case, Boyce twice petitioned POST to grant him a waiver of the requirement that he attend the Tennessee Law Enforcement Training Academy ("TLETA") recruit school; POST denied both requests.

On January 9, 2009, Boyce requested that POST issue him a sheriff's certificate of compliance, arguing that basic recruit training he received in 1976 from the Tennessee Law Enforcement Planning Commission was equivalent to the TLETA training required by statute. Boyce was hired by the City of Shelbyville as a police officer in January 1974 and transferred to the Bedford County Sheriff's Department in September 1974. He resigned from the sheriff's department in August 1978 and did not work in law enforcement again until he took office as sheriff in September 2006. POST denied Boyce's request for certification in a final order entered on January 22, 2009.

Boyce filed a petition for review in chancery court on February 17, 2009. In a detailed memorandum and order entered on October 1, 2009, the chancellor ordered POST to issue Boyce a sheriff's certificate of compliance based on a finding that Boyce's 1976 training was equivalent to the current TLETA training required by statute. POST filed a motion to alter or amend, which was denied by the chancery court on December 1, 2009.

In this appeal, POST asserts that the chancellor erred in reversing POST's denial of Boyce's application and that, even if the commission's denial was erroneous, the chancellor erred in mandating the issuance of a certificate to Boyce rather than remanding the matter back to POST. Boyce argues that the statutory requirement that a sheriff obtain POST certification is an unconstitutional delegation of legislative power. Boyce further requests his attorney fees and costs pursuant to the Equal Access to Justice Act.

STANDARD OF REVIEW

The applicable standard of review is found at Tenn. Code Ann. § 4-5-322(h):

The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

---

[1] Boyce was not required to have POST certification to qualify to run for election to the office of sheriff. *See* Tenn. Code Ann. § 8-8-102(d)(1).

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) (A) Unsupported by evidence that is both substantial and material in the light of the entire record.

    (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

The narrow standard of review under the Uniform Administrative Procedure Act ("UAPA") for an administrative body's factual determinations "suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency." *Wayne County v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988). This court, like the trial court, must apply the substantial and material evidence standard to the agency's factual findings. *City of Memphis v. Civil Serv. Comm'n*, 239 S.W.3d 202, 207 (Tenn. Ct. App. 2007); *Bobbitt v. Shell*, 115 S.W.3d 506, 509-10 (Tenn. Ct. App. 2003).

    With respect to questions of law, our review is de novo with no presumption of correctness. *County of Shelby v. Tompkins*, 241 S.W.3d 500, 505 (Tenn. Ct. App. 2007). Issues of statutory construction present questions of law and are therefore reviewed de novo with no presumption of correctness. *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

ANALYSIS

I.

    We must first address Boyce's constitutional challenge to the requirement in Tenn. Code Ann. § 8-8-102(a)(9)(A) that a sheriff "[p]ossess a current and valid peace officer certification as issued by the peace officer standards and training commission as provided in § 38-8-107, and as defined in title 38, chapter 8 . . . ." Boyce argues that requiring sheriffs to obtain POST certification constitutes an unconstitutional delegation of the power of the

General Assembly to another branch of government, in violation of the separation of powers embodied in article II, sections 1 and 2 of the Tennessee Constitution.

In evaluating whether a statute is constitutional, "we begin with the presumption that an act of the General Assembly is constitutional." *Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003). Thus, we must resolve every doubt in favor of the statute's constitutionality. *Id.*; *see also Chattanooga-Hamilton County Hosp. Auth. v. City of Chattanooga*, 580 S.W.2d 322, 326 (Tenn. 1979).

Article VII, section 1 of the Tennessee Constitution provides, as to sheriffs, that "[t]heir qualifications and duties shall be prescribed by the General Assembly." The language of article VII, section 1 does not prohibit the General Assembly from delegating the development of standards for police officer training required for sheriffs. The language "[t]heir qualifications and duties shall be prescribed by the General Assembly" is simply a restatement of the constitutional requirement, since the power to make laws is assigned to the legislature by the Tennessee Constitution. Tenn. Const. art. II, § 3; *Richardson v. Young*, 125 S.W. 664, 668 (Tenn. 1910). Under appropriate circumstances, as explained below, the legislature may delegate to administrative agencies the authority to make rules and regulations needed to implement legislative policies.

Under article II, section 3 of the Tennessee Constitution, the state's legislative power is vested in the General Assembly. The separation of powers doctrine dictates that the General Assembly may not delegate "purely legislative" power to an executive branch agency. *Gallaher*, 104 S.W.3d at 464 (quoting *State v. Edwards*, 572 S.W.2d 917, 919 (Tenn. 1978)). Purely legislative power means "the legislature's discretion as to what the law shall be." *Id.* The General Assembly may, however, "delegate to an administrative agency the authority to implement the expressed policy of particular statutes." *Id.* The delegated authority may include the power to enact reasonable rules and regulations. *Id.*

Our Supreme Court has enunciated a test for determining whether a statute embodies an unconstitutional delegation of legislative power: "whether the statute contains sufficient standards or guidelines to enable both the agency and the courts to determine if the agency is carrying out the legislature's intent." *Bean v. McWherter*, 953 S.W.2d 197, 199 (Tenn. 1997); *see also Gallaher*, 104 S.W.3d at 464. The governing standards do not have to be expressly stated as long as they can be "reasonably ascertained" from the statutory scheme. *Bean*, 953 S.W.2d at 199. The following principles are instructive:

> The necessity of expressed standards is contingent upon the statute's subject matter and on the degree of difficulty involved in articulating finite standards. Detailed or specific legislation may be neither required nor feasible when the

subject matter requires an agency's expertise and flexibility to deal with complex and changing conditions.

The requirement of expressed standards may also be relaxed when the discretion to be exercised relates to or regulates for the protection of the public's health, safety, and welfare. . . . .

. . . *Tasco [Developing & Bldg. Corp. v. Long*, 368 S.W.2d 65, 68 (Tenn. 1963),] teaches us that minutely detailed standards are not required when the statute's policy relates to public health, safety, or welfare and when flexibility is necessary for practical legislation.

*Bean*, 953 S.W.2d at 199-200.

In *Bean v. McWherter*, the Supreme Court examined a statute delegating the power to classify wildlife to the Tennessee Wildlife Resources Commission and found that the statute implied a standard of reasonableness and provided guidelines for classifying animals. *Id.* at 200. The Court therefore upheld the statute as constitutional. *Id.* In *State v. Edwards*, the Court upheld the constitutionality of a statutory scheme authorizing the commissioner of mental health and mental retardation, with the agreement of the commissioner of public health, to add, delete, or reclassify drugs in schedules under the Tennessee Drug Control Act. *Edwards*, 572 S.W.2d at 918-19. The Court determined that the statute contained sufficient standards to "delineate the general policy of the Act" and provided the commissioners with "the requisite guidance to determine and effect the will of the legislature." *Id.* at 920. The Court in *Edwards* specifically noted the necessity of delegating discretionary authority to an agency with respect to drug control:

To be effective, a drug control program must be reviewed continuously, and adjusted when necessary, in the light both of new drugs coming on to the market, and of new knowledge concerning old drugs. The legislature, by its nature, has neither the facilities nor the expertise to assume this task. Furthermore, because the legislature is not in continuous session, it cannot give the drug control program constant attention, the lack of which could result in a dangerous drug being widely disseminated throughout the state before effective controls were instituted.

*Id.* at 919.

To determine the constitutionality of the POST certification provisions as applied to sheriffs, therefore, we must examine the policies and standards embodied in the POST

statutory scheme. Title 38 of the Tennessee Code contains provisions concerning the prevention and detection of crime. Tenn. Code Ann. §§ 38-8-101–38-8-122 address the training of police officers. Tenn. Code Ann. § 38-8-102 establishes the Tennessee Peace Officer Standards and Training Commission ("POST"). Pursuant to Tenn. Code Ann. § 38-8-104(a), the powers and duties of POST include the following:

> (1) Develop, plan and implement law enforcement training programs for all local law enforcement officers in Tennessee;
>
> (2) Function as a clearing house for training programs related to local law enforcement;
> . . . .
>
> (4) Establish uniform standards for the employment and training of police officers, including preemployment qualifications and requirements for officer certification;
>
> (5) Establish minimum standards and curriculum requirements for the courses of study offered by or for any municipality, the state of Tennessee or any political subdivision of the state, for the specific purpose of training police recruits or police officers;[2]

POST has the duty to enforce and administer all the provisions of Chapter 8 and is authorized "to adopt and enforce such rules and regulations as may be necessary to carry out the provisions of this chapter." Tenn. Code Ann. § 38-8-104(b), (c). POST has been described as part of "a broad scheme to establish standards and training for law enforcement officers throughout Tennessee." *Castro v. Peace Officer Standards & Training Comm'n*, No. M2006-02251-COA-R3-CV, 2008 WL 3343000, at *3 (Tenn. Ct. App. Aug. 11, 2008).

Tenn. Code Ann. § 38-8-107(a) provides that POST "shall issue a certificate of compliance to any person who meets the qualifications for employment and satisfactorily completes an approved recruit training program." Tenn. Code Ann. § 38-8-110 states: "The provisions of this chapter do not apply to any elected officers . . . , except that this chapter applies to sheriffs under § 38-8-111." While Tenn. Code Ann. § 38-8-111 generally addresses in-service training and the payment of cash supplements to officers completing such training, subsection (f) specifically addresses sheriffs. Tenn. Code Ann. § 38-8-111(f)(1) and (2) provide for annual in-service training and salary supplements for sheriffs.

---

[2]Subsequent statutory provisions address specific topics to be included in the training curriculum. *See, e.g.,* Tenn. Code Ann. §§ 38-8-112, 38-8-113, 38-8-117.

Tenn. Code Ann. § 38-8-111(f)(3) provides that POST "shall issue to any sheriff successfully completing recruit training, or possessing its equivalency, and completing continuing annual training, a sheriff's certificate of compliance in the manner in which it issues police officers' certificates of compliance."

A general policy underlying the POST statutory scheme is to provide peace officers with training consistent with current professional standards. POST is given the authority to establish the minimum standards for the recruit training curriculum and to make rules and regulations necessary to carry out and enforce those standards. Tenn. Code Ann. § 38-8-104. As noted with respect to agency authority in previous cases, it makes sense that an agency such as POST be given discretionary authority with respect to subjects requiring flexibility and expertise to keep up with changing needs, especially in areas having to do with public safety. *See Bean*, 953 S.W.2d at 200; *Edwards*, 572 S.W.2d at 919. In Tenn. Code Ann. § 8-8-102(a)(9)(A), the General Assembly essentially provided that sheriffs are to meet the current professional standards for peace officers as determined by POST. We do not consider this to constitute an unconstitutional delegation of legislative authority.

II.

Having rejected the constitutional challenge, we proceed to a determination as to whether the chancellor erred in concluding that POST exceeded its statutory authority "when it failed to decide whether Petitioner's 1976 training was equivalent to current basic recruit training standards." We must respectfully disagree with the chancellor's interpretation and conclusion.

POST's brief final order states that POST "has reviewed the request to grant certification to Sheriff Randall Boyce and, pursuant to Tenn. Code Ann. §§ 8-8-102(d) and 38-8-111(f), has voted to deny said request." Pursuant to Tenn. Code Ann. § 4-5-314(c), an agency's final order "shall include conclusions of law, the policy reasons therefor, and findings of fact for all aspects of the order . . . ." The purpose of this requirement "is to enable the trier of fact to determine the basis for which the administrative agency reached its decision, thereby safeguarding against arbitrary or untenable conclusions." *Sw. Motor Freight, Inc. v. Dep't of Commerce & Ins.*, No. 01A01-9403-CH-00119, 1994 WL 700884, at *4 (Tenn. Ct. App. Dec.16, 1994). The absence of factual findings in POST's final order in this case does not preclude judicial review since the operative facts are undisputed. As to the requirement of legal conclusions and policy reasons, POST's citation to the operative statutory provisions and its denial of Boyce's certification provide only the most cursory explanation of the agency's reasoning. While this court has decided not to remand this case to POST for a satisfactory final order, POST is admonished to comply with the requirements of Tenn. Code Ann. § 4-5-314(c) in its final orders in the future.

It is undisputed that, pursuant to Tenn. Code Ann. § 8-8-102(d), Boyce was statutorily required to obtain POST certification in order to receive a salary supplement or qualify for reelection to the office of sheriff. Boyce did not enroll in the TLETA recruit training progam within six months of taking office. *See* Tenn. Code Ann. § 8-8-102(d)(1). In seeking certification without the required recruit training, Boyce argued that the basic recruit training he received in 1976 from the Tennessee Law Enforcement Planning Commission should qualify him for certification. Pursuant to Tenn. Code Ann. § 38-8-111(f)(3), POST "*shall* issue to any sheriff successfully completing recruit training, *or possessing its equivalency*, and completing continuing annual training, a sheriff's certificate of compliance in the manner in which it issues police officers' certificates of compliance" (emphasis added). Boyce asserts that he was entitled to certification under this provision. The chancellor determined that POST erred in failing to consider whether his prior training was equivalent to the TLETA required by POST.

We disagree with the chancellor's interpretation of the administrative record that POST failed to consider whether Boyce's recruit training in 1976 was equivalent to the current POST recruit training requirement. In their deliberations, the POST commissioners referenced the agency's rules providing that an officer out of law enforcement for more than ten years must go through recruit training again.[3] Boyce argued to the commission that this rule should not apply to a sheriff because Tenn. Code Ann. § 38-8-111(f)(3) requires certification of a sheriff who has successfully completed recruit training or its equivalent and that Boyce went through the training required under the statutory scheme in effect in 1976. We interpret "sheriff successfully completing recruit training" in (f)(3) to refer to a person in the office of sheriff completing the current training required by POST. Furthermore, we agree with the commission's position that the "or possessing its equivalency" language of Tenn. Code Ann. § 38-8-111(f)(3) gives POST the discretion to determine what is equivalent to its current training requirement.

The agency rule—that recruit training received by an officer out of law enforcement for over ten years does not meet the POST training requirement—does not exceed its statutory authority or constitute an arbitrary use of the agency's discretion. This rule reflects the agency's determination that an individualized consideration of the training received by an officer out of service for over ten years is not necessary or productive given the changing demands of police work. With its specialized knowledge, experience, and expertise, POST has the authority to determine when a break in full-time law enforcement service is significant enough to require additional training. As POST states in its appellate brief, "common sense dictates that, over a twenty-eight (28) year period of time, not only have

---

[3]Tenn. Comp. R. & Regs. 1110-2-.03(7)(a) was the rule in effect at the time of POST's decision.

criminal laws changed, but so have law enforcement practices and procedures, as well as POST training requirements."

In overturning POST's denial of certification to Boyce, the chancellor also relied on his finding that "the Commission affirmatively stated at the agency hearing that it never issues certificates of compliance to sheriffs who have not completed recruit training." After reviewing the entire transcript of the agency hearing, we must respectfully disagree with the chancellor's interpretation. We find the following excerpts from the hearing transcript to be instructive on this point:

> COMMISSIONER FITZGERALD: . . . You keep talking about compliance. You know, being certified versus being in compliance. We use the word compliance when a department is not–what's the, what am I looking for? Like certain departments, we put them in compliance. They don't have a certificate. They're in compliance because it has to do with the department. A sheriff's office, you can't be in compliance. I mean certificate of compliance. You have to be certified. So, maybe you're getting confused on that type of wording. You know. It just has to do with the department when we use the word compliance.

> COMMISSIONER GODWIN: That's right. That a department remains in compliance.
> . . . .

> COMMISSIONER MORAN: I have just one question. I'm reading here, and maybe I'm just, there's no difference, but it says he's requesting a Sheriff's Certificate of Compliance. Are we talking about certification or compliance? Is there such a thing as compliance as a sheriff?

> MR. GRISHAM [POST executive secretary]: That was an antiquated compliance certificate when POST first came into existence. In the beginning, sheriffs were excepted from POST rules. Many sheriffs, at that time, were issued Certificates of Compliance, and there's still some statutory mention of it.

> COMMISSIONER MORAN: But it's not anything we practice?

> MR. GRISHAM: It's nothing we issue now.

These statements at the hearing pertain to the distinction between being "certified" and being "in compliance." As stated by the POST executive director, some of the statutory provisions, including Tenn. Code Ann. § 38-8-111(f)(3), still refer to a "certificate of compliance" even though that term has been superceded under the current statutory scheme. Under the current statutory scheme, the relevant term is "certification," and that is what Boyce is seeking in the case: POST certification. *See* Tenn. Code Ann. § 8-8-102. The hearing excerpts cited by the chancellor, and by Boyce, indicate that POST no longer issues certificates of compliance to sheriffs; POST does, however, issue POST certification to sheriffs.

For all of these reasons, we conclude that the chancellor erred in reversing the agency's decision.

CONCLUSION

The judgment of the trial court is reversed and the matter is remanded for entry of an order affirming the agency decision. Costs of appeal are assessed against the appellee, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE