# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 21, 2011 Session

## STATE OF TENNESSEE v. BRANDON LLOYD RUSSELL

**Direct Appeal from the Criminal Court for Davidson County**
**No. 4012     Mark J. Fishburn, Judge**

_____

**No. M2010-01386-CCA-R3-CD - Filed March 15, 2012**

_____

Following a bench trial, the Defendant-Appellant, Brandon Lloyd Russell, was convicted of two counts of violating a commercial fishing proclamation that prohibited cutting paddlefish to check for eggs or "roe." The trial court sentenced Russell to two consecutive six-month sentences, which the trial court suspended and ordered him to serve on probation. In addition, the trial court allowed the State to retain the property that was seized as a part of these offenses, ordered Russell to serve eighty hours of community service, and suspended Russell's hunting and fishing license for three years and his commercial fishing license for six years, retroactive to the date of the offenses. On appeal, Russell argues that the trial court erred in denying his motion to dismiss the charges because: (1) the General Assembly, in enacting Tennessee Code Annotated section 70-4-102, unlawfully delegated its legislative authority to enact criminal law, thereby violating the constitutional separation of powers doctrine; (2) the relevant wildlife proclamations were not valid because the Tennessee Wildlife Resources Commission was improperly constituted at the time that the proclamations were enacted; and (3) he had insufficient notice of the wildlife proclamations and, therefore, insufficient notice of the criminal offenses with which he was charged. Upon review, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Dan R. Alexander, Nashville, Tennessee, for the Defendant-Appellant, Brandon Lloyd Russell.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Robert Homlar, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

Russell was charged by misdemeanor citation in the Davidson County General Sessions Court pursuant to section 70-4-102 with two counts of violating a commercial fishing proclamation because he cut two paddlefish with a knife to check for eggs on January 24, 2008. He was also charged by misdemeanor citation with violating another proclamation because he failed to measure the fish he caught to determine whether they met the thirty-six-inch size limit from the fish's eye to the fork of the tail and because he retained two fish that were below the size limit. Russell filed a motion to dismiss these charges, claiming that he did not have proper notice of the offenses with which he was charged, that the General Assembly unlawfully delegated legislative authority to the Tennessee Wildlife Resources Commission (TWRC), and that the commission's wildlife proclamations were unlawfully enacted. In response, the Tennessee Attorney General and Reporter filed a brief opposing the motion to dismiss and filed a supplemental brief.

Russell was convicted as charged in Davidson County General Sessions Court. He then perfected a de novo appeal to the Davidson County Criminal Court. Russell again filed a motion to dismiss the charges, and the Tennessee Attorney General and Reporter filed a memorandum opposing the motion to dismiss. Russell filed a memorandum containing supplemental authority.

The Davidson County Criminal Court denied the motion to dismiss. Russell then waived his right to a jury trial. Following a bench trial, Russell was found guilty of two counts of violating the wildlife proclamation that prohibited cutting paddlefish with a knife to check for eggs and was found not guilty of violating the proclamation regarding the paddlefish size limit.

The trial court subsequently sentenced Russell to two consecutive six-month sentences, which the trial court suspended and ordered to be served on probation. In addition, the trial court ordered that the State retain the property that was seized as a part of this offense, ordered Russell to serve eighty hours of community service, and suspended Russell's hunting and fishing license for three years and Russell's commercial fishing license for six years, retroactive to the date of the offense. These judgments of conviction were entered on March 15, 2010.

On April 1, 2010, Russell filed a motion to amend and modify "the final order in this matter to reflect that the Court denied [his] motion to dismiss the charges." On May 12, 2010, the trial court granted this motion. On May 25, 2010, the trial court filed a written order

denying the motion to dismiss, wherein the court stated that "[t]he final sentencing [o]rder in this case is so [a]mended as may be necessary." On June 22, 2010, Russell filed an untimely notice of appeal.

**Trial.** Agent Edward Gover of the Tennessee Wildlife Resources Agency testified that he was observing commercial fishermen on the Cumberland River on January 24, 2008. He was on the Hermitage side of the river and was "looking straight down into [Russell's] boat." He described his observations:

> Russell was working the net. He was bringing the net in, picking fish out of it, and [Robert Gentry, Russell's co-defendant, who was deceased at the time of trial] was sitting behind him on the seat. The current was keeping the boat. The boat was running of course with the river, and where I was observing from [sic], I was looking down into the boat. So after the fish got into the boat, I started watching, and there were several fish that, you know, further out, I said, I really think this is what's going on, and then the closer they got, it became very obvious, I was watching the chartreuse knife go into the belly of the fish, then the fish picked up and tossed back into the water. Mr. Gentry was doing that as Russell was picking the net.

Agent Gover drove to Neely's Bend boat ramp where he talked to Russell and Gentry and looked at their fishing licenses. He asked Gentry "if he had stuck any fish and thrown them back," and Gentry responded that he had cut and thrown back four or five fish. Agent Gover subsequently issued citations to Gentry for "[f]ive counts of violation of commercial fishing regulations[.]" He did not issue any citations to Russell. Agent Gover said that all of the fish in the boat contained roe; therefore, he assumed that Russell and Gentry were cutting the fish to check for roe, and if they did not have any roe, they were throwing the fish back into the water.

Agent Matt Brian of the Tennessee Wildlife Resources Agency testified that he was at Neely's Bend boat ramp and observed some nets in the water on January 24, 2008. He watched one net near Neely's Bend boat ramp while Agent Gover watched another net upstream. Agent Brian said he observed Russell and Gentry pulling the net in and getting the fish out. Agent Gover had told Agent Brian to look for a chartreuse knife, and he saw Russell "stab two fish with a chartreuse knife" before throwing them back into the river. He said that a "chartreuse handled knife" with a "spoon on one end" was found in Russell's boat. Agent Brian issued Russell "two citations for . . . sticking the fish." He later issued Russell an additional citation for possessing two paddlefish under the legal size limit.

Charles Couch, Jr., a commercial enforcement officer with the Tennessee Wildlife Resources Agency, testified that all of the nine fish on Russell's boat had roe and that several of the fish retrieved from Russell's boat had "actual eggs . . . protruding from those stab marks." He said that the fish had been stabbed "on the side or on the bottom of the side" in the ovaries "to check for the presence of eggs." Agent Couch stated that he could think of no other reason to stab a fish in the region of the ovaries other than to check for eggs. He also stated that there was a commercial market for the flesh of paddlefish.

Heal DeFriese, a commercial fisherman, testified that he met Agent Couch on the evening of January 24, 2008, and purchased the roe from the fish taken from Russell's boat. DeFriese said that there was a market for the meat from the paddlefish. He also said that if the paddlefish were thirty-six inches long or greater, a fisherman was allowed to "block" the fish, that is, take the head off the fish and gut it.

The Defendant-Appellant, Brandon Russell, testified that if he were leaning over working, it would be impossible for the agents to see what he was doing. He said that he was pulling in the nets and "was taking the knife and . . . was cutting the webbing [of the net] to get the fish out and [to] release the small fish." Russell said that his net was old, and it was easier to cut the net to remove the fish than to remove them by hand. He acknowledged that someone looking down might have thought that he was cutting the fish rather than cutting the net and throwing the small fish back into the water. However, he asserted that he never told any officers that he cut any fish. He said that he intended to cut the heads off and gut the fish he kept before taking the eggs to be sold. Russell said that he never saw Gentry cut any fish but acknowledged that he would not have been able to see Gentry's actions if Gentry had turned his back to him. Russell said that the roe from the fish he kept would have sold for a little over $3,000.

On cross-examination, Russell admitted that he cut some of the fish that he kept. When asked why he cut them, he stated, "Because they was [sic] my fish, and if they're 36 inches, you can do – they're your fish and you can do anything you want with them. He said he cut them "because [he] needed to know how many fish were egg fish [sic] because you have a certain amount of time to process these fish before the eggs will ruin." He stated that he did not cut all of the fish because "[s]ome fish you can look at and tell they're full of eggs[.]" Russell said that he had a stainless steel needle on his boat on January 24, 2008, but he never used the needle to check for roe that day.

On rebuttal, Agent Brian testified that Russell was "standing straight up" when he saw Russell's knife cut the belly of the fish. He confirmed that there was "no issue" regarding his ability to see Russell during the commission of these offenses.

**ANALYSIS**

Russell argues that the trial court erred in denying his motion to dismiss the charges because: (1) the General Assembly, in enacting Tennessee Code Annotated section 70-4-102, unlawfully delegated its legislative authority to enact criminal law, thereby violating the constitutional separation of powers doctrine; (2) the wildlife proclamations were not valid against him because of the improper membership of the TWRC at the time the proclamations were enacted; and (3) he had insufficient notice of the wildlife proclamations and, therefore, had insufficient notice of the criminal offenses with which he was charged. In response, the State contends that none of Russell's arguments support a dismissal of his charges.

**I. Untimely Notice of Appeal.** We must initially address the State's contention that Russell failed to file a timely notice of appeal before addressing Russell's issues on appeal. The record shows that although Russell's judgments were entered on March 15, 2010, he did not file his notice of appeal until June 22, 2010, more than three months later. The State specifically argues that Russell's post-judgment filing of the motion to amend and modify the final order did not toll the time period for filing a notice of appeal. The State notes that Russell provided no explanation for the untimely filing or for why a motion to amend was required for appellate jurisdiction. Consequently, the State asserts that the interest of justice does not weigh in favor of a waiver of the requirement to file a timely notice of appeal.

Tennessee Rule of Appellate Procedure 4(a) states that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." However, in the event that a post-judgment motion is filed for a judgment of acquittal, suspended sentence, withdrawal of a guilty plea, new trial, or arrest of judgment, "the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion." Tenn. R. App. P. 4(c). No other motions are allowed to toll the time period for filing a notice of appeal. See State v. Lock, 839 S.W.2d 436, 440 (Tenn. Crim. App. 1992) (citing State v. Bilbrey, 816 S.W.2d 71, 74-75 (Tenn. Crim. App. 1991)). Accordingly, Russell's motion to amend and modify the final order did not toll the time for filing a notice of appeal.[1]

---

[1] We note that Russell did not file a motion for new trial in this case, and none was required because he was tried pursuant to a bench trial. See Tenn. R. App. P. 3(e) (stating that prior to filing an appeal, defendants must file a motion for new trial "in all cases tried by a jury"); McCormic v. Smith, 659 S.W.2d 804, 806 (Tenn. 1983) (noting that defendants in non-jury cases may file a motion for new trial but such a motion is not required). Moreover, Russell's three issues assert that the trial court erred in denying his motion to dismiss, and these issues are not ones which, if meritorious, would result in a new trial. Accordingly, these issues were not required to be included in a timely filed motion for new trial for this reason as well. See State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994) ("This Court has held that the failure to file a motion for a new trial, the late filing of a motion for a new trial, and the failure to include
(continued...)

-5-

However, "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). This court, in deciding whether to grant a waiver regarding an untimely notice of appeal, "shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case." Michelle Pierre Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App., at Nashville, Feb. 13, 1996), perm. app. denied, (Tenn. May 28, 1996). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (citing Michelle Pierre Hill, 1996 WL 63950, at *1).

Here, Russell filed a notice of appeal on June 22, 2010, ninety-nine days after entry of the judgments of conviction in this case. Although Russell did not file one of the enumerated motions that would toll the time period for filing a notice of appeal, he did file his motion to amend seventeen days after his judgments were entered. Moreover, after the court entered an order on this motion to amend on May 25, 2010, Russell filed his notice of appeal on June 22, 2010, less than thirty days later. The State argues, and we agree, that Russell has failed to provide an explanation for his untimely filing. However, given the chronology of events, we conclude that the "interest of justice" is best served by granting a waiver of the requirement to file a timely notice of appeal in this case. See Tenn. R. App. P. 4(a); see also Crittenden v. State, 978 S.W.2d 929, 932 (Tenn. 1998). Accordingly, we will address Russell's appeal on the merits.

## II. Unlawful Delegation of Legislative Authority (Defendant's Issues I and III).

Russell argues that the General Assembly, in enacting Tennessee Code Annotated section 70-4-102, unlawfully delegated its legislative authority to enact criminal law to the Tennessee Wildlife Resources Commission within the executive branch, thereby violating the constitutional separation of powers doctrine. He also contends that section 70-4-102 is not a criminal statute and, therefore, cannot be violated because it does not state any prohibited conduct. In response, the State contends that "[t]he TWRC has not been delegated the authority to determine which wildlife proclamations carry a criminal penalty or the severity of that penalty" because "[t]hose decisions were made by the legislature and can only be modified by the legislature." We agree with the State.

---

[1](...continued)
an issue in a motion for a new trial results in waiver of all issues which, if found to be meritorious, would result in the granting of a new trial." (footnote omitted)).

At the time of the offenses in this case, article XI, section 13 of the Tennessee Constitution stated that "[t]he General Assembly shall have power to enact laws for the protection and preservation of Game and Fish, within the State, and such laws may be enacted for and applied and enforced in particular Counties or geographical districts, designated by the General Assembly."[2] Tennessee Const. art. XI, § 13. By section 70-1-201, the General Assembly created "[a]n independent and separate administrative board of conservation for game, fish and wildlife of the state" known as the Tennessee Wildlife Resources Commission (TWRC). As relevant here, the General Assembly directed the TWRC to "[p]romulgate necessary rules, regulations, and proclamations" regarding hunting and fishing within the state. T.C.A. § 70-1-206(a)(3). Moreover, the General Assembly "declared a closed season upon all hunting and fishing[.]" Id. § 70-4-107(a). However, the TWRC was given the authority to enact proclamations to "open" seasons for certain types of hunting and fishing. Id. § 70-4-107(b), (d), (f). The TWRC was also given the authority to enact proclamations to determine the manner and means by which individuals were allowed to legally hunt or fish. Id. § 70-4-107(c)(2).

Here, Russell was given a citation for violating Tennessee Code Annotated section 70-4-102, which provides:

(a) It is unlawful for any person to hunt, kill, trap, ensnare, or destroy, or to attempt to hunt, kill, trap, ensnare, or destroy, or to have in such person's possession, any form of wildlife except subject to the restrictions and by the means and devices and at the time prescribed by this title.

(b) Any violations of the proclamations and rules and regulations proclaimed by the wildlife resources commission are punishable as provided in this title, and the illegal taking or possession of each bird, animal or fish constitutes a separate offense.

---

[2] On November 2, 2010, article XI, section 13 of the Tennessee Constitution was amended to state the following:

The General Assembly shall have power to enact laws for the protection and preservation of Game and Fish, within the State, and such laws may be enacted for and applied and enforced in particular Counties or geographical districts, designated by the General Assembly. The citizens of this state shall have the personal right to hunt and fish, subject to reasonable regulations and restrictions prescribed by law. The recognition of this right does not abrogate any private or public property rights, nor does it limit the state's power to regulate commercial activity. Traditional manners and means may be used to take non-threatened species.

(c) A violation of this section is a Class B misdemeanor.

At trial, the State argued that Russell had violated Wildlife Proclamation 06-22, which states under Section III(B): "The cutting or mutilation of paddlefish to check for eggs is prohibited except that a stainless steel 12-gauge needle may be inserted into the abdomen between the pectoral and pelvic fins to determine the presence of eggs." Russell was found not guilty of the citation involving Wildlife Proclamation 07-11, which stated at the time of the offense that a paddlefish could not be harvested unless the fish measured at least thirty-six inches from the eye to the fork of the tail.

Russell argues that the General Assembly, in enacting section 70-4-102, unlawfully delegated its legislative authority to enact criminal law, thereby violating the constitutional separation of powers doctrine. Article II, section one of the Tennessee Constitution states, "The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial." Tennessee Const. art. II, § 1. In addition, article II, section two provides: "No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." Tennessee Const. art. II, § 2. Article II, section three states that the legislative power of the State is vested in the General Assembly. Tennessee Const. art. II, § 3. As a part of its legislative power, the General Assembly has the sole authority to define criminal acts and to determine appropriate punishments. See Hickman v. Tennessee Bd. of Paroles, 78 S.W.3d 285, 290 (Tenn. Ct. App. 2001).

"[P]urely legislative" power may not be delegated by the General Assembly. Gallaher v. Elam, 104 S.W.3d 455, 464 (Tenn. 2003) (citing State v. Edwards, 572 S.W.2d 917, 919 (Tenn. 1978); Chattanooga–Hamilton County Hosp. Auth. v. Chattanooga, 580 S.W.2d 322, 328 (Tenn. 1979)). "Therefore, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be." Id. (citing Dep't of Pub. Welfare v. Nat'l Help "U" Ass'n, 270 S.W.2d 337, 339 (1954)).

The State argues, and we agree, that section 70-4-102 does not violate the separation of powers doctrine because the TWRC was never authorized to define criminal offenses related to hunting or fishing or to set a punishment for such offenses. Instead, the General Assembly, in section 70-4-102, provided that a violation of a wildlife proclamation was punishable as a Class B misdemeanor.

Another delegation of legislative power to the TWRC has been deemed proper. In Bean v. McWherter, 953 S.W.2d 197 (Tenn. 1997), the Tennessee Supreme Court determined that the General Assembly's delegation of power to the TWRC to add or delete

animals from the dangerous species list was constitutional. The court outlined the law regarding a legal delegation of legislative authority:

> The General Assembly may grant an administrative agency the power to promulgate rules and regulations which have the effect of law in the agency's area of operation. Tasco v. Long, 368 S.W.2d 65, 68–69 (1963). This grant of power, however, should be limited and defined in such a manner that administrative officials can discern and implement the legislature's will. 16 C.J.S. Constitutional Law § 137, 448–49 (1984). An administrative agency may be afforded discretion as to implementation of legislative policy but not as to determination of that policy. State v. Edwards, 572 S.W.2d 917, 919 (Tenn. 1978).

Id. at 199. The court emphasized that "[l]egislative delegations must also contain sufficient safeguards to prevent agencies from acting in an arbitrary manner." Id. (citing Edwards, 572 S.W.2d at 919; Tasco, 368 S.W.2d at 68). The court in Bean then established the following test for determining whether the General Assembly lawfully delegated it legislative power:

> [T]he test for determining whether a statute is an unlawful delegation is whether the statute contains sufficient standards or guidelines to enable both the agency and the courts to determine if the agency is carrying out the legislature's intent.

Id. The court provided guidance regarding the degree of specificity required in the statutes delegating legislative authority:

> Governing standards need not be expressed provided such standards can be reasonably ascertained from the statutory scheme as a whole. The necessity of expressed standards is contingent upon the statute's subject matter and on the degree of difficulty involved in articulating finite standards. Detailed or specific legislation may be neither required nor feasible when the subject matter requires an agency's expertise and flexibility to deal with complex and changing conditions.

Id. (emphasis added).

Upon review, we conclude that the General Assembly's delegation of power to the TWRC to enact proclamations regulating hunting and fishing does not violate the separation of powers doctrine. Just as in Bean, the TWRC must "deal with complex and changing conditions" in order to protect game and fish from extinction or undue depletion. See id.;

-9-

T.C.A. § 70-4-107(b), (c)(2). It would be impossible for the General Assembly to pass new laws regulating hunting and fishing every time the supply of game or fish increased or decreased. See Tasco, 368 S.W.2d at 68 ("Obviously it would be impractical for the Legislature to cover by statutory enactment the detail and minutia required for the adequate regulation of all general contractors, or to attempt to set up standards that would necessarily involve the same details."). Pursuant to the test established in Bean, we conclude that Title 70 establishes standards and guidelines regarding the regulation of hunting or fishing that are sufficiently clear to enable the TWRC and this court to determine if the TWRC is carrying out the General Assembly's intent in its wildlife proclamations.

Russell also contends that section 70-4-102 is not a criminal statute and, therefore, cannot be violated because it does not state any prohibited conduct. In response, the State aptly cites several code sections in which the General Assembly established criminal penalties for administrative violations.[3] The State also asserts that the TWRC does not have legislative power to establish criminal laws and that the General Assembly, not the TWRC, enacted the criminal penalty in section 70-4-102, which made violations of wildlife proclamations punishable as a Class B misdemeanor. We agree with the State. Accordingly, we conclude that section 70-4-102 is not an unlawful delegation of legislative authority and, therefore, does not violate the separation of powers doctrine.

**III. Improperly Constituted TWRC (Defendant's Issue I).** Russell also contends that the TWRC proclamations with which he was charged were invalid because the commission was "not properly constituted pursuant to the provisions of [section] 70-1-201, which mandates that at least two members of the Commission be female." In response, the State contends that the wildlife proclamations in effect at the time of the offenses applied to Russell regardless of the membership composition of the TWRC because nothing in Title 70 indicates that the failure to have two women serving on the commission would result in an invalidation of all proclamations during that period. We agree with the State.

The State acknowledges that Tennessee Code Annotated section 4-5-216 states that "rules improperly adopted under the Uniform Administrative Procedures Act (UAPA) have no legal affect[.]" However, the State asserts that section 4-5-106(d) "specifically exempts

---

[3] The State cited the following code sections in its brief: T.C.A.§§ 8-30-206 (violation of state civil service rules a Class C misdemeanor), 11-1-109 (violation of rules relating to the management of state parks and recreation areas a Class C misdemeanor), 11-21-105 (violation of rules of county conservation boards promulgated for the protection of local parks and playgrounds a Class B misdemeanor), 36-1-139 (violation of rules establishing procedures for searching adoption records a Class E felony), 42-2-105 (violation of rules regulating aeronautics a Class E felony), 43-6-112 (violation of pest control regulations a Class C misdemeanor), 48-2-123 (violation of state securities regulations a Class D felony), 62-26-230 (violation of private investigator regulations a Class A misdemeanor).

TWRC from the rulemaking and publication provisions of the UAPA." See T.C.A. § 4-5-106(d) ("The rulemaking and publication provisions of this chapter shall not apply to proclamations promulgated under the provisions of title 70, and the promulgation, filing and publication provisions of such title shall control, except that the secretary of state shall publish on the administrative register web site current and effective proclamations in the same manner that rules and other notices are published under § 4-5-220."). The State adds that "[w]ith no provision for an improperly constituted TWRC, this would appear to indicate that the language is aspirational only and has no actual consequence for the governor and/or the speakers not appointing two female commissioners."[4] Moreover, the State argues that "even an improperly constituted TWRC would qualify as a de facto government[.]" See generally Jordan v. Knox County, 213 S.W.3d 751, 774-77 (Tenn. 2007). The State also contends that the invalidation of these proclamations would provide no relief for Russell, since all hunting and fishing is illegal without an enacted proclamation to "open" a season for certain fish and game. See T.C.A. § 70-4-107(b), (c)(2). Furthermore, the State asserts that even if the relevant proclamations were inapplicable because of an "improperly constituted TWRC[,]" there were earlier, similar proclamations enacted while two women were serving on the TWRC that would apply to this case. Specifically, the State notes that Section III(B) of Wildlife Proclamation 02-13, which was enacted when the commission was properly constituted, stated that "[t]he cutting or mutilation of paddlefish to check for eggs is prohibited." Although we do not agree that the language requiring two female commissioners was "aspirational only[,]" we do agree that the improper composition of the TWRC did not prevent the wildlife proclamations from being valid against Russell.

Tennessee Code Annotation section 70-1-201(a) outlines the creation and membership of the Tennessee Wildlife Resources Commission:

An independent and separate administrative board of conservation for game, fish and wildlife of the state is created, to be known and referred to as the wildlife resources commission and sometimes referred to as the commission in this part, to consist of the commissioner of environment and conservation, the commissioner of agriculture and eleven (11) citizens of the state, which citizens shall be well informed on the subject of the conservation of game animals, birds and fish within the state. Nine (9) of these citizens shall be appointed by the governor, one (1) shall be appointed by the speaker of the senate, and one (1) shall be appointed by the speaker of the house, each to be appointed within the period provided in this section. In making appointments

---

[4] The State acknowledges that "[u]pon the resignation of Betsy Child as Commissioner of the Department of Environment and Conservation in April 2005, only one woman was serving on the TWRC until 2009, when a second woman was appointed."

to the wildlife resources commission, the governor shall strive to ensure that at least one (1) person serving on the commission is sixty (60) years of age or older and that at least one (1) person serving on the commission is a member of a racial minority. At least two (2) people serving on the commission shall be female.

Id. § 70-1-201(a) (emphasis added). We conclude that the aforementioned statute requires that at least two women serve on the TWRC and that the "strive to ensure" language refers to the individuals in that sentence. However, we further conclude that the actions taken by the TWRC were not void simply because the commission's membership had an improper composition at the time of the offenses. Accordingly, Russell is not entitled to relief on this issue.

**IV. Notice (Defendant's Issue II).** Russell also argues that his due process rights were violated because the citations he was issued did not give him proper notice of the "particular proclamation, rule, or regulation" that the State alleges he violated." In addition, he contends that he did not receive proper notice because "the adoption of the [p]roclamations and their publication or lack of publication violate [his] right to due process of law." He contends that, because proclamations become effective thirty days after they are filed with the secretary of state and because the proclamations are not subject to the rules requiring the publishing of a public notice and agenda under the Tennessee Open Meetings Act, as found in Tennessee Code Annotated sections 8-44-101 to 8-44-111, "it is critical that the individual charged with a violation know [the] proclamation [with which] he is being charged" in order to determine whether the proclamation was in effect at the time of the alleged offense.

The State responds that, because the General Assembly granted the TWRC authority to enact proclamations regulating hunting and fishing and because these proclamations become effective thirty days after they are filed with the Secretary of State, Russell was given adequate notice of these proclamations. See id. § 70-4-107(b), (c)(1), (c)(2). The State also contends that Russell was given actual notice of the TWRC's authority to enact proclamations when he signed his commercial fishing contract, thereby agreeing to "abide by all laws and proclamations governing commercial fishing." Moreover, the State argues that Russell's misdemeanor citations for which he was found guilty properly informed him that he had violated a commercial fishing proclamation pursuant to section 70-4-102 because one of the citations stated that "[i]t is illegal to use a knife to check for eggs in paddle fish [sic]" and the other citation stated that "[i]t is illegal to use a knife, in any fashion, to check paddle fish [sic] for eggs." Regarding Russell's argument that the relevant proclamations were invalid because they were enacted in violation of the Open Meetings Act, the State counters that this Act requires that governmental bodies provide adequate notice of scheduled

or special meetings, keep minutes that are available for public inspection, and refrain from secret votes, and that nothing in the record on appeal indicates that these requirements were not followed by the TWRC. We agree with the State.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and the "Law of the Land" Clause of article I, section 8 of the Tennessee Constitution afford all criminal defendants the right to a fair trial. U.S. Const. amend. XIV; Tennessee Const. art. I, § 8. Moreover, the United States Constitution and the Tennessee Constitution state that a defendant is entitled to knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tennessee Const. art. I, § 9. Pursuant to State v. Hill, an indictment is valid if it contains sufficient information

> (1) to enable the accused to know the accusation to which answer is required,

> (2) to furnish the court adequate basis for the entry of a proper judgment, and

> (3) to protect the accused from double jeopardy.

954 S.W.2d at 727 (citing State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991); VanArsdall v. State, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995); State v. Smith, 612 S.W.2d 493, 497 (Tenn. Crim. App. 1980)). In addition, pursuant to Tennessee Code Annotated section 40-13-202, the indictment must

> state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. . . .

T.C.A. § 40-13-202. Although the previous authorities refer to the requirements for indictments, they are also helpful in determining whether the misdemeanor citations in this case gave Russell proper notice of the proclamations that he allegedly violated.

Russell argues that his due process rights were violated because the citations he was issued failed to identify the particular proclamation that the State alleges he violated. However, the citations in this case clearly stated that Russell's conduct violated section 70-4-102 because wildlife proclamations prohibited cutting paddlefish to check for eggs. The citations provided the date, place, and description of the offenses. "The fundamental test of the sufficiency of an indictment is the adequacy of the notice to the defendant conveyed by its terms." Green v. State, 143 S.W.2d 713, 715 (Tenn. 1940). We conclude that the

-13-

misdemeanor citations provided adequate notice to Russell. Although the citations did not identify the specific number of the wildlife proclamation violated, they placed Russell on notice as to the charges, placed jurisdiction of the case squarely with the trial court, and foreclosed double jeopardy problems. See Hill, 954 S.W.2d at 727; see also Robert Howell v. Tony Parker, Warden, No. W2005-00521-CCA-R3-HC, 2005 WL 1541825, at *2 (Tenn. Crim. App., at Jackson, June 27, 2005), perm. app. denied, (Tenn. Dec. 5, 2005) ("The content of the indictment was sufficient to place the Petitioner on notice of the nature of the charges, confer jurisdiction upon the trial court, and protect against double jeopardy.").

Russell also argues that his due process rights were violated because he did not have notice of the adoption of the relevant proclamations in this case. However, this argument is unpersuasive because the TWRC is required to publish all proclamations which are currently in effect on the administrative register web site:

> The rulemaking and publication provisions of this chapter shall not apply to proclamations promulgated under the provisions of title 70, and the promulgation, filing and publication provisions of such title shall control, except that the secretary of state shall publish on the administrative register web site current and effective proclamations in the same manner that rules and other notices are published under § 4-5-220. The text of proclamations shall be published on the administrative register web site under the proclamation section and shall have the same weight and effect prescribed in § 4-5-221(c), for the text of rules so published. The wildlife resources agency shall keep an original copy of all proclamations from which the effective dates of all proclamations can be determined.

Id. § 4-5-106(d). Accordingly, Russell is not entitled to relief.

## CONCLUSION

The trial court did not err in denying Russell's motion to dismiss. Specifically, we conclude that Tennessee Code Annotated section 70-4-102 is not an unlawful delegation of legislative authority and, therefore, does not violate the separation of powers doctrine. We further conclude that the improper composition of the TWRC did not prevent the wildlife proclamations from being valid against Russell. Finally, we conclude that Russell had sufficient notice of the wildlife proclamations and the criminal offenses with which he was charged. Upon review, we affirm the judgments of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE